IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QINETIQ LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-372 (JAP) |
| | ) | |
| OCLARO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT OCLARO, INC.'S BRIEF IN OPPOSITION TO QINETIQ LIMITED'S
MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO RULE 12(b)(6)
AND MOTION TO STRIKE PURSUANT TO RULE 12(f),
<u>AND, IN THE ALTERNATIVE, REQUEST FOR LEAVE TO AMEND</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
*Attorneys for Defendant Oclaro, Inc.*

OF COUNSEL:

Thomas J. Friel, Jr.
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
(415) 693-2000

Wayne O. Stacy
Carolyn V. Juarez
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
(720) 566-4000

August 24, 2009

TABLE OF CONTENTS

PAGE

I.      NATURE AND STAGE OF THE PROCEEDINGS .......................................... 1

II.     INTRODUCTION .......................................................................................... 1

III.    FACTUAL BACKGROUND ......................................................................... 2

IV.     ARGUMENT ................................................................................................. 4

        A.      QinetiQ's Motion to Dismiss Oclaro's Third and Fourth
                Counterclaims and Motion to Strike Oclaro's Eighth Affirmative
                Defense Should Be Denied ................................................................ 4

                1.      Legal Standard ........................................................................ 4

                        a.      The *Iqbal/Twombly* Pleading Standard for Claims ............ 4

                        b.      Motions to Strike Affirmative Defenses are Highly
                                Disfavored ...................................................................... 5

                2.      Oclaro's Pleading Adequately States Facts Supporting its
                        Claims for Unenforceability Due to Laches and its Laches
                        Affirmative Defense ................................................................ 6

                3.      Oclaro's Pleading Adequately States Facts Supporting its
                        Claims for Unenforceability Due to Equitable Estoppel and
                        its Equitable Estoppel Affirmative Defense ................................ 8

        B.      In the Alternative, Oclaro Requests Leave to Amend its Third and
                Fourth Counterclaims........................................................................ 10

V.      CONCLUSION .......................................................................................... 11

TABLE OF AUTHORITIES

PAGE

CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ................................................................. 6, 7, 8

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .................................................................................. passim

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 4, 5

*Burlington Coat Factory Sec. Litig., In re*
    114 F.3d 1410 (3d Cir. 1997) ...................................................................... 11

*Cintron Beverage Group, LLC v. Depersia*,
    2008 WL 1776430 (E.D. Pa. Apr. 15, 2008) ............................................ 6

*Cipollone v. Liggett Group, Inc.*,
    789 F.2d 181 (3d Cir. 1986) ........................................................................ 6, 8, 9

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ........................................................................................ 4

*Foman v. Davis*,
    371 U.S. 178 (1962) ...................................................................................... 10

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ........................................................................ 5

*Procter & Gamble Co. v. Nabisco Brands, Inc.*
    697 F. Supp. 1360 (D. Del. 1988) .............................................................. 5

*Seidel v. Lee*,
    954 F. Supp. 810 (D. Del. 1996) ................................................................ 5

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000) ........................................................................ 10

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
    2009 U.S. Dist. LEXIS 56038 (D. Del. July 1, 2009) .............................. 5, 8, 9

*Symbol Techs., Inc. v. Aruba Networks, Inc.*,
    609 F. Supp. 2d 353 (D. Del. 2009) .......................................................... 5, 6, 9, 10

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

**OTHER AUTHORITIES**

Fed. R. Civ. P.
8 ................................................................................................................... 4
12(b)(6) ................................................................................................. 1, 4
12(f) ...................................................................................................... 1, 5
15(a) ....................................................................................................... 10

L.R. 7.1.3(c)(2)............................................................................................ 11

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On May 27, 2009, plaintiff QinetiQ Limited ("QinetiQ") filed its Complaint alleging infringement of U.S. Patent Nos. 5,410,625 (the "'625 patent") and 5,428,698 (the "'698 patent") (together, the "patents-in-suit") by defendant Oclaro, Inc.'s ("Oclaro's") "optical components and modules." (D.I. 1, ¶ 8.)[1]  On July 16, 2009, Oclaro filed its Answer to QinetiQ's Complaint, which alleges two claims for declaratory judgment of unenforceability of the patents-in-suit and an affirmative defense based on the equitable doctrines of laches and estoppel.   (D.I. 9, Countercl. ¶¶ 17-38, Aff. Def. ¶ 8.)

On August 7, 2009, QinetiQ filed a Motion to Dismiss seeking the dismissal of Oclaro's Third and Fourth Counterclaims for unenforceability of the patents-in-suit and a Motion to Strike Oclaro's Eighth Affirmative Defense.   Oclaro submits this Brief in Opposition to QinetiQ's Motion to Dismiss Counterclaims Pursuant to Rule 12(b)(6) and Motion to Strike Pursuant to Rule 12(f) (the "Motions"), and, in the Alternative, Request for Leave to Amend.

## II.     INTRODUCTION

By filing its Motion to Dismiss, QinetiQ seeks for this Court to determine – at the outset of this litigation, without the benefit of discovery – the question of whether QinetiQ's claims for patent infringement against Oclaro are barred due to the equitable doctrines of laches and estoppel.   Under the guise of arguing that Oclaro's unenforceability counterclaims and laches/estoppel affirmative defense do not meet the recently-announced pleading standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), QinetiQ requests that this Court resolve disputed

---

[1]      QinetiQ's Complaint was filed nearly two weeks after *Iqbal* was decided.   Under the arguments presented by QinetiQ in its Opening Brief, QinetiQ's own claims for patent infringement – which do not identify a single claim asserted against Oclaro's products – would not have survived a Motion to Dismiss.

questions of fact and law at the pleading stage by dismissing Oclaro's Third and Fourth Counterclaims **without leave to amend** and striking Oclaro's Eighth Affirmative Defense.[2]  Such disposition of Oclaro's counterclaims and affirmative defense is inappropriate at this juncture of the case.

QinetiQ represents throughout its Opening Brief that Oclaro has pled no factual allegations in support of its counterclaims and affirmative defense.  However, on their face, the allegations of Oclaro's counterclaims and defenses not only plead facts supporting each element of laches and equitable estoppel, but plead adequate facts to state plausible claims for relief – which is precisely what *Iqbal* requires.  QinetiQ's Motions ignore that QinetiQ itself has the identified facts in its possession, as they are contained in correspondence between QinetiQ and Oclaro that continued over more than nine years.  Accordingly, the Court should deny QinetiQ's motion to dismiss Oclaro's Third and Fourth Counterclaims and motion to strike Oclaro's Eighth Affirmative Defense.

## III.    FACTUAL BACKGROUND

Over the course of two pages of its responsive pleading, Oclaro clearly sets out the factual basis for its Third and Fourth Counterclaims for unenforceability of the patents-in-suit:

- QinetiQ "knew or should have known that Oclaro was producing optical components" since "at least April 25, 2000." (D.I. 9, Countercl. ¶ 18, 29.)

- QinetiQ "delayed filing suit against Oclaro…for at least nine years after QinetiQ knew or should have known that Oclaro was producing optical components." (D.I. 9, Countercl. ¶ 19, 30.)

---

[2]    QinetiQ's Opening Brief makes no mention of its request for dismissal with prejudice of Oclaro's unenforceability counterclaims and laches and estoppel affirmative defense. Instead, QinetiQ slips its "without leave" request into its proposed Order.  (D.I. 10-2.) QinetiQ cites no law to support its extraordinary request.

- QinetiQ's "delay in filing suit against Oclaro was unreasonable." (D.I. 9, Countercl. ¶ 20, 31.)

- During QinetiQ's more than nine-year delay in filing suit, "QinetiQ, through misleading conduct, led Oclaro to reasonably infer that QinetiQ did not intend to enforce the claims of the [patents-in-suit] against Oclaro." (D.I. 9, Countercl. ¶ 21, 32.)

- Oclaro "relied on QinetiQ's misleading conduct." (D.I. 9, Countercl. ¶ 22, 33.)

- Oclaro "suffered economic and/or evidentiary prejudice" as "a result of QinetiQ's delay in filing suit against Oclaro and Oclaro's reliance on QinetiQ's misleading conduct." (D.I. 9, Countercl. ¶ 23, 34.)

(*See* D.I. 9 at 7-9.)  In addition to the factual allegations contained in its Third and Fourth Counterclaims, Oclaro's Eighth Affirmative Defense states that "QinetiQ's claims for relief are barred by the equitable doctrines of laches and/or estoppel." (D.I. 9, Aff. Def. ¶ 8.)

Oclaro's decision to allege April 25, 2000, as the earliest date on which QinetiQ knew or should have known that Oclaro was producing optical components was not arbitrary.  On that date, DERA, which is QinetiQ's predecessor entity, sent Marconi Optical Components, a company that Oclaro later acquired, a letter referring to and enclosing a copy of U.S. Patent No. 5,410,625.  (*See* Ex. 1.)  Subsequently, QinetiQ sent seven letters over the course of eight years to Oclaro regarding its assertions of infringement of U.S. Patent Nos. 5,410,625 and/or 5,428,698.  (*See* Exs. 1-7.)  Oclaro's factual allegations of the earliest date of QinetiQ's knowledge of Oclaro's products, the term of QinetiQ's delay in filing suit, and the existence of QinetiQ's misleading conduct are built around these letters.

IV.     **ARGUMENT**

      A.     **QinetiQ's Motion to Dismiss Oclaro's Third and Fourth Counterclaims and Motion to Strike Oclaro's Eighth Affirmative Defense Should Be Denied**

           1.     **Legal Standard**

                a.     **The *Iqbal/Twombly* Pleading Standard for Claims**

Oclaro's counterclaims exceed the pleading requirements mandated by Fed. R. Civ. P. 8, as recently interpreted by the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).  *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  *Iqbal* and *Twombly* do not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The *Iqbal* Court stated that, to survive a motion to dismiss, the claimant must state a plausible claim for relief that contains more than conclusory allegations:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 129 S. Ct. at 1949-50 (internal citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a claim as true and consider them in the light most favorable to the claimant. *Erickson v. Pardus*, 551 U.S. 89 (2007).  Stating a claim "'requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of" the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### b.      Motions to Strike Affirmative Defenses are Highly Disfavored

Pursuant to Rule 12(f), this Court "may strike from a pleading any insufficient defense[.]" Fed. R. Civ. P. 12(f).  Motions to strike under Rule 12(f) are generally disfavored. *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009); *Seidel v. Lee*, 954 F. Supp. 810, 912 (D. Del. 1996).  When ruling on a motion to strike, "the court 'must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law.'"  *Symbol Techs., Inc.*, 609 F. Supp. 2d at 356, *quoting Procter & Gamble Co. v. Nabisco Brands, Inc.* 697 F. Supp. 1360, 1362 (D. Del. 1988).  In considering a motion to strike a defense, courts look to the entirety of the pleading, including allegations contained in the answer and any counterclaims.  *See Sun Microsystems, Inc. v. Versata Enters., Inc.*, 2009 U.S. Dist. LEXIS 56038 at *35 (D. Del. July 1, 2009).

Contrary to QinetiQ's assertions, it is far from clear whether the *Iqbal/Twombly* standard defines the requirements for pleading affirmative defenses.  As this Court has recognized, while there have been cases in other District Courts that have applied the standard to affirmative defenses, many courts have also held that the *Iqbal/Twombly* pleading standard ***does not*** apply to affirmative defenses.  *See Sun Microsystems, Inc.*, 2009 U.S. Dist. LEXIS 56038, n.8 (citing several District Court cases holding that *Iqbal/Twombly* does and does not apply to affirmative defenses and reaching its decision without resolving the dispute).  To Oclaro's knowledge, this Court has not yet addressed whether the *Iqbal/Twombly* pleading standard applies to affirmative defenses.  However, it is well established Third Circuit law that, unless the insufficiency of the

defense is "clearly apparent," a court should not grant a motion to strike a defense. *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986).

Given the disfavored nature of motions to strike, courts have particularly struggled with striking defenses based on the equitable doctrines of laches and estoppel. *See Symbol Techs.*, 609 F. Supp. 2d at 357 (denying motion to strike in part because "equitable estoppel is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules"); *Cintron Beverage Group, LLC v. Depersia*, 2008 WL 1776430 (E.D. Pa. Apr. 15, 2008) (denying motion to strike laches defense because "a decision as to the applicability of the laches defense can only be made by a thorough examination of the facts" and stating that "[it] should not be dismissed in pre-trial motions").

> **2.      Oclaro's Pleading Adequately States Facts Supporting its Claims for Unenforceability Due to Laches and its Laches Affirmative Defense**

To plead a claim or defense of laches, Oclaro must plead facts demonstrating (1) that QinetiQ delayed filing suit for an unreasonable and inexcusable length of time from the time that QinetiQ knew or should have known of its claim and (2) that the delay operated to the prejudice or injury of Oclaro. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992).    The length of time that constitutes an unreasonable delay "depends on the circumstances," but is measured from the time the patentee "knew or reasonably should have known" of the alleged infringing activities. *Id.* Further, prejudice resulting from delay in filing suit "may be either economic or evidentiary." *Id.* After demonstrating a six-year delay in filing suit, an accused infringer makes out a prima facie defense of laches and a presumption of laches attaches. *Id.* at 1034, 1037.    In order to rebut the presumption of laches, a patentee must then

offer evidence directed to showing that either the patentee's delay in filing suit was reasonable or that the accused infringer suffered no prejudice, or both.  *Id.* at 1038.

QinetiQ's arguments that Oclaro's allegations fail to support its claim for unenforceability due to laches or its affirmative defense of laches suffer from a fundamental defect.  QinetiQ wrongly states that Oclaro "failed to allege facts to establish the elements of laches, including both when QinetiQ knew or should have known of infringement claims" and that Oclaro failed to allege "the nature of any prejudice Oclaro suffered."  (D.I. 11 at 9-10.)  To the contrary, Oclaro did, indeed, plead facts supporting its counterclaim for unenforceability due to laches and its affirmative defense of laches – and these are facts of which QinetiQ is well aware because they are contained in letters that QinetiQ itself sent to Oclaro.  (*See* Exs. 1-7.)  Oclaro alleges that QinetiQ "knew or should have known since April 25, 2000" that Oclaro was "producing optical components," which are the very type of products QinetiQ accuses of infringing the patents-in-suit.[3]  (D.I. 9, Countercl. ¶¶ 18, 29; Exs. 1-7.)  Oclaro alleges that QinetiQ delayed filing suit for "more than nine years."  (D.I. 9, Countercl. ¶¶ 19, 30; Exs. 1-7.)  Oclaro alleges that the delay was unreasonable.  (D.I. 9, Countercl. ¶¶ 20, 31.)  Oclaro alleges that it has suffered "economic and/or evidentiary" prejudice as a result of QinetiQ's delay.  (D.I. 9, Countercl. ¶¶ 23, 34.)  In sum, taking Oclaro's factual allegations as true, Oclaro alleges facts supporting each of the laches elements, has established a plausible claim for unenforceability due to laches, and has even pled a period of delay beyond the six years needed to establish a presumption of laches that QinetiQ must now rebut.  *See Iqbal*, 129 S. Ct. at 1949-

---

[3]     QinetiQ claims that Oclaro's denial of infringement liability for its optical component products essentially negates this factual allegation.  (D.I. 11 at 8-9.)  However, if QinetiQ's logic applied, no defendant could ever effectively plead laches while it simultaneously denied liability for infringement.

50.  Likewise, Oclaro's affirmative defense of laches is sufficient to survive QinetiQ's motion to strike.  *Cipollone,* 789 F.2d 181 at 188.

QinetiQ cites *Sun Microsystems, Inc. v. Versata Enterprises, Inc.*, 2009 U.S. Dist. LEXIS 56038 (D. Del. July 1, 2009) to support its argument that Oclaro's counterclaims for unenforceability due to laches should be dismissed and that Oclaro's affirmative defense of laches should be stricken.  (*See* D.I. 11 at 9.)   However, in *Sun Microsystems*, the Court dismissed the defendant's laches defense because it found ***no allegations*** supporting – or even suggesting – the unreasonable delay element of laches.  2009 U.S. Dist. LEXIS 56038 at *35.  *Sun Microsystems* is inapplicable here, where there are factual allegations not only suggesting, but supporting, every element of laches, including that QinetiQ delayed for over nine years before filing suit.

> **3.    Oclaro's Pleading Adequately States Facts Supporting its Claims for Unenforceability Due to Equitable Estoppel and its Equitable Estoppel Affirmative Defense**

To plead a claim for unenforceability due to the doctrine of equitable estoppel and an affirmative defense of equitable estoppel, Oclaro must plead facts showing that:  (1) QinetiQ's misleading words, conduct, or silence led Oclaro to reasonably infer that QinetiQ did not intend to enforce the patents-in-suit; (2) Oclaro relied on QinetiQ's misleading conduct; and (3) due to Oclaro's reliance, Oclaro will be materially prejudiced unless QinetiQ's infringement claims are barred.  *A.C. Aukerman*, 960 F.2d at 1041-42.

In keeping with the theme of its Opening Brief, QinetiQ incorrectly states that "Oclaro has failed to plead ***any*** facts" supporting its claim for unenforceability due to equitable estoppel or its affirmative defense of equitable estoppel.  (D.I. 11 at 6 (emphasis in original).)  Contrary to

QinetiQ's unsubstantiated argument, Oclaro has pled facts supporting each element of equitable estoppel. Again, these are facts that are based on QinetiQ's own correspondence with Oclaro. (*See* Exs. 1-7.) Oclaro states that QinetiQ engaged in "misleading conduct" that occurred "during the more than nine years that QinetiQ delayed filing suit against Oclaro." (D.I. 9, Countercl. ¶¶ 21, 32; Exs. 1-7.) Oclaro alleges that it "relied on QinetiQ's misleading conduct." (D.I. 9, Countercl. ¶¶ 22, 33.) And Oclaro alleges that it suffered "economic and/or evidentiary prejudice" as a result of its reliance on QinetiQ's misleading conduct. (D.I. 9, Countercl. ¶¶ 23, 34.) Taking Oclaro's factual allegations as true, Oclaro alleges facts supporting each of the elements of equitable estoppel and has established a plausible claim for unenforceability of the patents-in-suit due to equitable estoppel. *See Iqbal*, 129 S. Ct. at 1949-50. Oclaro's affirmative defense of equitable estoppel is similarly sufficient to survive QinetiQ's motion to strike. *Cipollone,* 789 F.2d 181 at 188.

QinetiQ again relies on *Sun Microsystems* to support its argument for dismissal of Oclaro's counterclaims for unenforceability due to equitable estoppel. However, in *Sun Microsystems*, the defendant's equitable estoppel defense contained a single conclusory allegation that the patentee "is estopped by its misleading, deceptive, and unlawful conduct" from asserting that the defendant's products or methods infringed any valid claim of the patents-in-suit, and utterly failed to plead any facts supporting the reliance or prejudice elements of equitable estoppel. 2009 U.S. Dist. LEXIS 56038 at *34. Oclaro has provided much more information than the defendant in *Sun Microsystems.* Indeed, in *Sun Microsystems*, Judge Farnan distinguished the defendant's allegations of equitable estoppel from the allegations asserted in *Symbol Techs., Inc. v. Aruba Networks, Inc.*, where this Court denied a motion to strike an

affirmative defense of equitable estoppel.  609 F. Supp. 2d at 357.  In *Symbol Techs*., defendant

Aruba Networks alleged that "Plaintiff Symbol is equitably estopped from asserting its…Patents

because at no point during extensive merger negotiations between Symbol and [Aruba] in 2003

did Symbol advise or suggest it might later assert the patents at issue against [Aruba]."  *Id*. at

356.  Similarly, Oclaro has alleged misleading conduct by QinetiQ over the course of nine years,

since at least April 25, 2000.  (D.I. 9, Countercl. ¶¶ 18, 21, 29, 32.)  In addition, Oclaro has

alleged facts supporting each element of its claim for unenforceability due to equitable estoppel

and its affirmative defense of equitable estoppel – which elements it appears that the defendant

in *Symbol Techs*. failed to plead even while it managed to survive the plaintiff's motion to strike.

*See Symbol Techs*., 609 F. Supp. 2d at 356.

**B.      In the Alternative, Oclaro Requests Leave to Amend its Third and Fourth Counterclaims**

Although QinetiQ does not address in either its Motions or its Opening Brief whether it

requests dismissal without leave to amend of Oclaro's Third and Fourth Counterclaims, it buries

that very request in its Proposed Order submitted to the Court.  (*See* D.I. 10-2.)  Accordingly,

Oclaro requests leave to amend its Third and Fourth Counterclaims should the Court decide to

grant the Motions.

It is well established that leave to amend a pleading under Rule 15(a) "shall be freely

given when justice so requires."  Fed. R. Civ. P. 15(a).  Although the grant or denial of an

opportunity to amend is within the discretion of the District Court, "'outright refusal to grant the

leave without any justifying reason appearing for the denial is…abuse of that discretion and

inconsistent with the spirit of the Federal Rules.'"  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir.

2000), *quoting Foman v. Davis*, 371 U.S. 178 (1962).  Among the grounds justifying a denial of

leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

No reason exists to deny Oclaro's request for leave to amend.   QinetiQ filed the Motions on August 7, 2009.   With this Brief in Opposition, Oclaro has promptly and in good faith requested leave to amend its Third and Fourth Counterclaims, if the Court determines that the Motions should be granted.   Moreover, QinetiQ will not be unfairly prejudiced by Oclaro's amendment; indeed, any amendment permitted by the Court would remedy the very complaints QinetiQ makes about the Third and Fourth Counterclaims and Eighth Affirmative Defense and would provide such information at an early stage of the case.   Given the early stage of the case, Oclaro's requested amendments would not inconvenience the Court.

QinetiQ's Opening Brief is silent on whether Oclaro's counterclaims should be dismissed with or without leave to amend.   QinetiQ failed to offer any of the governing law or any factual analysis supporting its request of dismissal without leave to amend.   (*See* D.I. 10-2, D.I. 11.) Under the Local Rules, QinetiQ cannot now advance or reserve for its reply brief its arguments in favor of dismissal without leave to amend.   (*See* L.R. 7.1.3(c)(2), stating that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.")   Accordingly, if the Court determines that Oclaro's Third and Fourth Counterclaims should be dismissed, the Court should grant Oclaro leave to amend its pleading.

## V.      CONCLUSION

Throughout its Opening Brief, QinetiQ attempts to misdirect this Court from the actual content of Oclaro's factual allegations.   Contrary to QinetiQ's representations, Oclaro's Third

and Fourth Counterclaims and Eighth Affirmative Defense contain facts supporting each element

of laches and estoppel – facts of which QinetiQ itself is well aware from its pre-suit dealings

with Oclaro.  These facts are more than adequate to plead a plausible claim for relief under the

*Twombly/Iqbal* pleading standard.  QinetiQ's Motions appear to be tactical in nature, designed to

inappropriately resolve disputed questions of law and fact on the pleadings.  Accordingly, this

Court should deny QinetiQ's Motion to Dismiss Oclaro's Third and Fourth Counterclaims and

Motion to Strike Oclaro's Eighth Affirmative Defense.  Should the Court decide otherwise,

Oclaro should be granted leave to amend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

_____

Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
*Attorneys for Defendant Oclaro, Inc.*

OF COUNSEL:

Thomas J. Friel, Jr.
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
(415) 693-2000

Wayne O. Stacy
Carolyn V. Juarez
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
(720) 566-4000

August 24, 2009
3086117

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 24, 2009, upon the following in the manner indicated:

Richard L. Horwitz                              *VIA ELECTRONIC MAIL*
David E. Moore                                      *AND HAND-DELIVERY*
D. Fon Muttamara-Walker
POTTER ANDERSON & CORROON LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899

James S. Blank                                  *VIA ELECTRONIC MAIL*
Stephen J. Elliott
Soumitra Deka
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022-3598


/s/ *Thomas C. Grimm*
_____
Thomas C. Grimm (#1098)

3086117