IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QINETIQ LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-372 (JAP) |
| | ) | |
| OCLARO, INC., | ) | **REDACTED-PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
*Attorneys for Defendant*

OF COUNSEL:

Thomas J. Friel, Jr.
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
(415) 693-2000

Wayne O. Stacy
Carolyn V. Juarez
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
(720) 566-4000

Confidential Version Filed: August 19, 2009

Public Version Filed: September 2, 2009

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................ 2

II.   INTRODUCTION ............................................................................................. 2

III.   STATEMENT OF FACTS ................................................................................ 3

    A.   Oclaro ................................................................................................... 4

    B.   QinetiQ .................................................................................................. 5

IV.   ARGUMENT .................................................................................................... 5

    A.   This Court Has Broad Discretion to Grant a Change of Venue ............. 5

        1.   Delaware Incorporation Should Not Prevent Transfer .............. 6

        2.   Factors Relevant to Determining Whether to Transfer Venue ................. 6

    B.   This Action Should Be Transferred to the Northern District of California ........... 7

        1.   Venue is Proper in the Northern District of California ............................. 7

        2.   Transfer to the Northern District of California Would Favor the Convenience of the Parties and Witnesses and Would Serve the Interests of Justice .................................................................... 8

V.   CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*ADE Corp. v. KLA-Tencor Corp.*,
138 F. Supp. 2d 565 (D. Del. 2001) .............................................................................. 7, 14

*Affymetrix, Inc. v. Synteni, Inc. et al.*,
28 F. Supp. 2d 192 (D. Del. 1998) ................................................................................. *passim*

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
295 F. Supp. 2d 393 (D. Del. 2002) ................................................................................ 6, 16

*Brunswick Corp. v. Pecor, Inc.*,
C.A. No. 00-691-GMS (D. Del. Dec. 12, 2000) ................................................................ 6

*Continental Casualty Co. v. American Home Assurance Co.*,
61 F. Supp. 2d 128 (D. Del. 1999) ................................................................................. 8, 9

*In re Genentech, Inc.*,
2009 WL 1425474 (Fed. Cir. May 22, 2009) ............................................................. 2, 10, 11

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1166 (S.D.N.Y. 1970) ................................................................................. 11

*Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.*,
C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001) ..................................................................... 6

*Inter-City Prods. Corp. v. Ins. Co. of North America*,
1993 WL 18948 (D. Del. Jan. 25, 1993) ......................................................................... 8, 9

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) ............................................................................................ *passim*

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
77 F. Supp. 2d 505 (D. Del. 1999) ............................................................................. 6, 10, 11, 16

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1970) ............................................................................................. 7

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ......................................................................................................... 7

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
329 F.3d 823 (Fed. Cir. 2003) ....................................................................................... 2

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
2009 WL 463977 (D. Del. Feb. 24, 2009) ...................................................................... 6, 16

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ....................................................... 2

*Van Dusen v. Barrack*,
376 U.S. 612, (1964) ..................................................................................................... 5

*In re Volkswagen, of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ......................................................................................... 2

**TABLE OF AUTHORITIES**
**(continued)**

Page

## <u>STATUTES</u>

28 U.S.C. §

    271...................................................................................................................... 7

    1391(c) .............................................................................................................. 8

    1400(b) .......................................................................................................... 5, 7

    1404(a) ..................................................................................................... 2, 4, 5, 7

## <u>RULES</u>

Fed. R. Civ. P. 45(b)(2),............................................................................................. 6

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff QinetiQ Limited ("QinetiQ"), a foreign company, brought this action alleging patent infringement against defendant Oclaro, Inc. ("Oclaro") on June 27, 2009.  On July 16, 2009, Oclaro filed its Answer and Counterclaims, denying infringement and requesting relief on its counterclaims for declaratory judgment of invalidity and unenforceability of the patents-in-suit.  On August 19, 2009, for convenience and in the interests of justice, pursuant to 28 U.S.C. § 1404(a), defendant Oclaro filed a Motion to Transfer Venue requesting an order transferring this action to the Northern District of California.  This is Oclaro's Opening Brief in support of that motion.

## II.     INTRODUCTION

Motions to transfer venue under Section 1404(a) have been in the spotlight in recent months:  the Federal Circuit has granted two petitions for writs of mandamus in the last eight months reversing decisions by the United States District Court for the Eastern District of Texas that denied venue transfer motions.  *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008); *In re Genentech, Inc.*, 2009 WL 1425474 (Fed. Cir. May 22, 2009).  In those cases, the Federal Circuit emphasized consideration of several transfer analysis factors used by the Fifth Circuit similar to those used by the Third Circuit, which are applicable here.[1]  First, the Federal Circuit recognized that the convenience of the witnesses, including the cost of attendance for the witnesses, is one of the most important factors in the venue transfer analysis.  Second, the Federal Circuit stated that the convenience of witnesses located in foreign countries should not

---

[1]      Venue transfer motions do not involve substantive issues of patent law, thus, the Federal Circuit applies the law of the regional circuit in which the district court sits.  *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).  The factors for venue transfer analysis used in the Fifth Circuit are substantially similar to those used in the Third Circuit.  *Compare In re Volkswagen, of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) and *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

outweigh the convenience of witnesses residing in the transfer forum because the foreign witnesses must travel a significant distance to *any* forum.  Finally, the Federal Circuit noted that the central location of the chosen forum should not be a consideration where there are no witnesses residing within the forum.

The *only* connection between this dispute and Delaware is Oclaro's Delaware incorporation.  Delaware courts have consistently recognized that Delaware incorporation will not prevent transfer where, as here, the transfer forum is more convenient and has more connections to the litigation.  Oclaro's headquarters and business activities are centered in San Jose, California, which lies within the boundaries of the Northern District of California.  Oclaro's key non-party witnesses reside in the Northern District of California.  Oclaro performs design, development, manufacturing and sales activities in locations in the Northern District of California.

In contrast, Oclaro owns no property in Delaware, maintains no records in Delaware, and performs no design, development, manufacturing or sales activities in Delaware.  Neither party maintains offices in Delaware:  in fact, QinetiQ is incorporated and headquartered in the United Kingdom.  None of the anticipated witnesses resides in Delaware and many reside overseas – both particularly important facts in light of the recent Federal Circuit decisions.  In fact, Oclaro's key non-party witnesses reside in the Northern District of California.  In sum, the balance of convenience of the parties strongly weighs in favor of transfer to the Northern District of California.

## III.   STATEMENT OF FACTS

On May 27, 2009, QinetiQ filed this patent infringement action against Oclaro.  QinetiQ's complaint alleges that Oclaro infringes two patents, U.S. Patent Nos. 5,419,625 and 5,428,698.  (*See* Compl. ¶¶ 2-3.)  Specifically, QinetiQ accuses Oclaro's optical components

used in telecommunications networks of infringing the patents-in-suit.  (Compl. ¶¶ 3, 8, 16.)
While this dispute has only one connection to Delaware – Oclaro's place of incorporation – there
are numerous strong connections between this dispute and the Northern District of California.

### A.     Oclaro

Oclaro is a Delaware corporation with its headquarters located in San Jose, California.
(Compl. ¶ 3.)  Oclaro has deep roots in the San Francisco Bay area:  Oclaro was recently formed
from the merger of two established Bay Area companies, Bookham, Inc. and Avanex Corp.
(Decl. of Jerry Turin in Support of Defendant's Motion to Transfer Venue Under 28 U.S.C.
§ 1404(a) (hereinafter, "Turin Decl.") ¶ 3.)  Oclaro's connections to the Northern District of
California are substantial, especially when compared against its connections to the District of
Delaware:

- Of Oclaro's four offices in the United States, three are located in the San Francisco Bay area.[2]

- Oclaro has no offices in Delaware and maintains no records in Delaware.  (Turin Decl. ¶¶ 4, 7-9.)

- Oclaro owns no property in Delaware.  (Turin Decl. ¶ 6.)

- Oclaro does not sell its MMI products to any customers located in Delaware.  (Turin Decl. ¶ 10.)

- Oclaro does not ship its MMI products into Delaware.  (Turin Decl. ¶ 10.)

- Oclaro has documents related to research and development of its MMI products located at its San Jose, California headquarters.  (Turin Decl. ¶ 8.)

- Oclaro has documents related to sales of its MMI products located at its San Jose, California headquarters.  (Turin Decl. ¶ 8.)

- Many of Oclaro's material witnesses reside near its San Jose, California headquarters. (Turin Decl. ¶¶ 5, 8, 9.)

---

[2]     Besides Oclaro's San Jose, California headquarters, Oclaro also maintains offices in Fremont, California and Santa Rosa, California.  (Turin Decl. ¶ 4.)  Oclaro's fourth United States office is a small office located in Horseheads, New York  (Turin Decl. ¶ 4.)

### B.    QinetiQ

QinetiQ is registered under the laws of the United Kingdom and has its roots in the U.K.

government's Defense Evaluation and Research Agency.  (Ex. 1.)  QinetiQ has no connection to

Delaware:

- QinetiQ's principal place of business is in London, U.K.  (Compl. ¶ 2.)

- QinetiQ operates a subsidiary in the United States, QinetiQ North America, but has no offices in Delaware.  (Ex. 2.)  There is no indication that QinetiQ North America is involved in this action:  QinetiQ Limited asserts that it, not QinetiQ North America, owns all right, title and interest in the patents-in-suit.  (Compl. ¶ 7, 15.)

- According to the patents-in-suit, the inventors of the patents-in-suit reside in the United Kingdom.  (*See* Compl., Exs. A and B.)

- REDACTED


- REDACTED


## IV.    ARGUMENT

### A.    This Court Has Broad Discretion to Grant a Change of Venue

The purpose of Section 1404(a) is to "prevent the waste of time, energy, and money" and

"to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."

*Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) (internal quotation marks omitted).

A federal court may transfer a civil action to another district where that action "might have been

brought" if the transfer favors the convenience of the parties and witnesses, and promotes the

interests of justice.  28 U.S.C. § 1404(a).  In patent infringement litigation, a transferee court

where the action "might have been brought" is one "where the defendant resides, or where the

defendant has committed acts of infringement and has a regular and established place of

business."  28 U.S.C. § 1400(b).

## 1.      Delaware Incorporation Should Not Prevent Transfer

This Court has repeatedly held that, although a party's incorporation in Delaware is relevant to the venue determination, it is not dispositive and has not prevented transfer.  *See Synthes USA, LLC v. Spinal Kinetics, Inc.*, 2009 WL 463977 (D. Del. Feb. 24, 2009); *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505 (D. Del. 1999).  "Where an alternative forum is more convenient and has more substantial connections with the litigation incorporation in Delaware will not prevent transfer."  *APV North America, Inc.*, 295 F. Supp. 2d at 398-99, *quoting Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.*, C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001) and *Brunswick Corp. v. Pecor, Inc.*, C.A. No. 00-691-GMS (D. Del. Dec. 12, 2000).

## 2.      Factors Relevant to Determining Whether to Transfer Venue

When evaluating Section 1404(a) motions, a court must conduct an "individualized, case-by-case" analysis, weighing an extensive list of private and public factors that may be relevant to determining whether a venue transfer favors the convenience of the parties and witnesses and serves the interests of justice:

- Plaintiff's choice of forum;

- Defendant's forum preference;

- Where the claim arose;

- The convenience of the parties as indicated by their relative physical and financial conditions;

- The convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;[3]

---

[3]      Pursuant to Fed. R. Civ. P. 45(b)(2), the attendance of non-party witnesses at trial may be compelled only by issuing subpoenas in the judicial district where the trial will take

- ▪ The enforceability of the judgment;

- ▪ Practical considerations that could expedite or simplify trial;

- ▪ The level of court congestion of the two fora;

- ▪ The local interest in deciding local controversies at home; and

- ▪ The public policies of the fora.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).[4]   Under Section 1404(a), the Court has broad discretion to decide whether the facts demonstrate that the transferee court is a more convenient forum.   *Id.* at 883; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).   Transfer is appropriate where the balance of convenience of the parties weighs strongly in favor of transfer.   *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

**B.      This Action Should Be Transferred to the Northern District of California**

**1.      Venue is Proper in the Northern District of California**

This Court must first determine that the Northern District of California is a venue in which this action might have been brought.   28 U.S.C. § 1404(a).   In patent infringement litigation, a court where the action "might have been brought" is one "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."   28 U.S.C. § 1400(b).   Under 28 U.S.C. § 271, "acts of

---

place, or at any location outside the district if that location is within 100 miles of the trial location.

[4]      In *Jumara*, the Third Circuit listed two additional factors:  "the location of books and records – but only to the extent that the files could not be produced in the alternative forum" and "the familiarity of the trial judge with the applicable state law in diversity cases."   Subsequent decisions have noted that, in today's world of electronic discovery, it is unlikely that parties will be unable to produce documents in the alternative forum.   *See, e.g.*, *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001) (citations omitted).   Further, the instant action is one for patent infringement under Title 28 of the United States Code.  (Compl. ¶ 4.)   Thus, the diversity factor is not applicable.   Because the *Jumara* factors are neither mandatory nor exclusive, these two factors are not addressed in this brief.

infringement" include making, using, offering for sale, or selling a patented invention within the United States.  A corporation "resides" in the judicial district in which it is subject to personal jurisdiction if that judicial district were considered to be a state.  *See* 28 U.S.C. § 1391(c).

Oclaro's principal place of business is located in San Jose, California, which is governed by the Northern District of California.  (Compl. ¶ 3.)  In addition, Oclaro's design, development and sales activities for the accused products are concentrated in San Jose, California.  (Turin Decl. ¶ 8.)  Accordingly, QinetiQ could have brought this action in the Northern District of California.

> **2.      Transfer to the Northern District of California Would Favor the Convenience of the Parties and Witnesses and Would Serve the Interests of Justice**

Although QinetiQ chose to file suit in the District of Delaware, analysis of the public and private interest factors enumerated in *Jumara* demonstrates that the "center of gravity" of this dispute falls squarely within the borders of the Northern District of California.  *Inter-City Prods. Corp. v. Ins. Co. of North America*, 1993 WL 18948 (D. Del. Jan. 25, 1993).  As such, the balance of convenience to the parties strongly weighs in favor of transfer to the Northern District of California.

> **a.      QinetiQ's Choice of Forum Is Not its Home Turf and Has No Connection to the Subject Matter of This Dispute**

There is generally a presumption in favor of the plaintiff's choice of forum.  *Jumara*, 55 F.3d at 879.  However, it is well-settled in this Court that transfer is generally regarded as less inconvenient to the plaintiff when the plaintiff has chosen to bring suit in a district that is not plaintiff's "home turf" at or near plaintiff's principal place of business, and that has no connection to any acts giving rise to the lawsuit.  *See Affymetrix, Inc. v. Synteni, Inc. et al.,* 28 F. Supp. 2d 192, 199 (D. Del. 1998); *Continental Casualty Co. v. American Home Assurance*

*Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999); *Inter-City Prods. Corp.*, 1993 WL 18948 at *1 (citations omitted).

The *only* connection between this dispute and Delaware is the fact that Oclaro is a Delaware corporation.  QinetiQ is a United Kingdom corporation, so, although the District of Delaware is on the east coast and relatively near to the United Kingdom, neither the District of Delaware nor any other United States court is QinetiQ's actual "home turf."  Further, QinetiQ did not choose to file in a forum with any connection to acts giving rise to this dispute.  Oclaro commits no acts of alleged infringement in Delaware:  the design, development and manufacture of Oclaro's MMI product occurs in the Oclaro's San Jose, California headquarters, the United Kingdom, and China, and Oclaro neither sells nor ships MMI products to companies located in Delaware.  (Turin Decl. ¶¶ 8-10.)  Transfer to the Northern District of California will be less inconvenient to QinetiQ because QinetiQ has no "home turf" in the United States and chose to file this action in Delaware, a forum that is unconnected to any acts giving rise to this dispute. *See Affymetrix, Inc.*, 28 F. Supp. 2d at 199; *Continental Casualty Co.*, 61 F. Supp. 2d at 131; *Inter-City Prods. Corp.*, 1993 WL 18948 at *1.

### b.  QinetiQ's Infringement Claim Arises Within the Boundaries of the Northern District of California, Oclaro's Preferred Forum

Oclaro's forum preference is the Northern District of California.  Oclaro's principal place of business is in San Jose, California, which is within the boundaries of the Northern District of California.  (Compl. ¶ 3.)  Oclaro's design, development, manufacturing and sales activities related to the accused products occur within the boundaries of the Northern District of California and overseas.  (Turin Decl. ¶¶ 8, 9.)  None of Oclaro's allegedly infringing acts occur within the boundaries of the District of Delaware.  (*Id.*)  Accordingly, this factor weighs in favor of transfer.

**c.** **The Northern District of California is Significantly More Convenient for Oclaro and Equally Convenient for QinetiQ**

Oclaro's main corporate presence is in San Jose, California, within the borders of the Northern District of California. (Compl. ¶ 3.) The majority of Oclaro's management executives reside in within the Northern District of California. (Turin Decl. ¶ 5.) Many of Oclaro's material witnesses reside within the Northern District of California. (Turin Decl. ¶¶ 5, 8, 9; Rundle Decl. ¶¶ 4, 5.) Oclaro has no offices, property, employees, or records located in the State of Delaware. (Turin Decl. ¶¶ 4-9.) It would be significantly more convenient for this dispute to be litigated near Oclaro's center of operations.

QinetiQ's principal place of business is in London, outside the boundaries of both the District of Delaware and the Northern District of California. (Compl ¶ 2.) QinetiQ appears to have no offices or employees located in the State of Delaware. (Ex. 2.) Litigating this matter in the Northern District of California would be equally convenient for QinetiQ. Thus, this factor weighs in favor of transfer.

**d.** **The Northern District of California is Significantly More Convenient for Oclaro's Witnesses and Equally Convenient for QinetiQ's Witnesses**

An "important factor, and the factor most frequently mentioned, in passing on a motion to transfer…is the convenience of the witnesses." 15 Charles Alan Wright et al., Federal Practice and Procedure; *see also Mentor Graphics Corp. v. Quickturn Design Sys.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (noting that "witnesses who possess first-hand knowledge of the events giving rise to the lawsuit…have traditionally weighed quite heavily in the 'balance of convenience' analysis"). The recent Federal Circuit decisions have focused on this factor as one of the most important in the transfer analysis. *See Genentech*, 2009 WL 1425474 at *3-4; *TS Tech*, 551 F.3d at 1321.

Convenience of the witnesses should be considered where, as here, "the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. The convenience of witnesses that are employees of a party carry less weight because the parties are obligated to procure their attendance at trial, while convenience of non-party witnesses should be considered when determining whether the alternative forum is more convenient. *See Mentor Graphics*, 77 F. Supp. 2d 510; *Affymetrix*, 28 F. Supp. 2d at 203.

Nearly all of Oclaro's corporate witnesses on design, development, manufacturing, marketing, and sales of the accused products reside within the subpoena power of the Northern District of California. (Turin Decl. ¶¶ 5, 8, 9.) Further, Oclaro anticipates that non-party witnesses residing outside the subpoena power of the District of Delaware – but within the subpoena power of the Northern District of California – will be critically important to damages issues. REDACTED

This testimony is relevant to the determination of damages in this case under the factors announced in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1166, 1121 (S.D.N.Y. 1970). REDACTED

REDACTED

In contrast, QinetiQ's material witnesses are likely to be the inventors of the patents-in-suit, all of whom appear to reside in the United Kingdom. (*See* Exs. A and B to Compl.) The Federal Circuit recently cautioned that "witnesses from Europe will be required to travel a significant distance no matter where they testify," so courts should not weigh their inconvenience

more heavily than the convenience of witnesses who reside in the transferee forum.  *See Genentech*, 2009 WL 1425474 at *4.  As this Court has previously noted, this Court has no more subpoena power over the foreign inventor witnesses than the Northern District of California.  *See Mentor Graphics*, 77 F. Supp. 2d 512 (noting that the District of Delaware could not compel witnesses residing in France to testify any more than the Northern District of California could).

Further, it is not more convenient to litigate this dispute in Delaware simply because Delaware is located between California and the United Kingdom.  *See Genentech*, 2009 WL 1425474 at *5 (stating that it is improper to use a central location as a consideration in the absence of witnesses within the plaintiff's choice of venue).  It is equally convenient for witnesses from the United Kingdom to travel to the Northern District of California.  The Northern District of California is near San Francisco International Airport, a major international airport into which direct flights from London regularly arrive, minimizing any inconvenience to QinetiQ's witnesses.[5]  (Ex. 3.)  Indeed, Philadelphia International Airport, the major airport nearest to the District of Delaware, is a negligibly shorter flight – just about three hours shorter – from the United Kingdom than San Francisco International Airport.[6]  (Ex. 4.)    REDACTED

REDACTED

Because the Northern District of California is significantly more convenient for Oclaro's non-party witnesses, and equally convenient for QinetiQ's inventor witnesses, this pivotal factor

---

[5]     There are at least ten direct flights per day from London Heathrow Airport to San Francisco International Airport.  (Ex. 3.)

[6]     The direct flight time from London Heathrow Airport to Philadelphia International Airport is approximately 8 hours.  (Ex. 4.)  The direct flight time from London Heathrow Airport to San Francisco International Airport is approximately 11 hours.  (Ex. 3.)

weighs heavily in favor of transfer.

>    **e.**    **Enforceability of the Judgment Does Not Favor or Disfavor Transfer**

Oclaro is incorporated under the laws of the State of Delaware and, thus, is subject to the jurisdiction of this Court.  (Compl. ¶ 3.)  Oclaro's principal place of business is in San Jose, California, so it is also subject to the jurisdiction of the Northern District of California.  (Compl. ¶ 3.)  Thus, any judgment entered against Oclaro could be enforced by either the District of Delaware or the Northern District of California.  This factor neither favors nor disfavors transfer.

>    **f.**    **It Will Be Less Expensive and More Efficient to Litigate This Dispute in the Northern District of California**

The Northern District of California is the least expensive forum to litigation this action because the vast majority of evidence and witnesses are located there.  As discussed previously in Section IV.B.4, virtually all executive marketing and sales decisions about the accused products were made in San Jose, California.  (Turin Decl. ¶ 8.)  As a result, most of Oclaro's fact witnesses on these subjects and documentary and physical evidence relevant to damages are in San Jose.  (Turin Decl. ¶ 8.)                           REDACTED

>                                                              It would be far less expensive, and far more efficient, to coordinate testimony of witnesses who reside only a short commute from most of the courtrooms in the Northern District of California than it would be to coordinate travel to and lodging for those witnesses in Delaware.  Although design, development and manufacture of Oclaro's accused products also takes place in the United Kingdom and China, it is equally efficient for witnesses located in the United Kingdom and more efficient for witnesses located in China to travel to San Francisco, also negating additional expense.

Oclaro is represented by counsel admitted to practice in the Northern District of

California.  (Ex. 5.)  To continue this action in the District of Delaware, Oclaro would be forced

to incur significant travel costs for its company witnesses, lost productivity while those witnesses

attend trial activities, and local counsel fees for retaining Delaware counsel.  *See* L.R. 83.5(b)

(1995); *Mentor Graphics*, 77 F. Supp. 2d at n.7 (considering the parties' savings on travel and

local counsel expenses as factors in determining that the Northern District of California was

more convenient for the parties); *see also Affymetrix*, 28 F. Supp. 2d at 205-6 (taking into

consideration the elimination of local counsel expenses resulting from transfer to the Northern

District of California).  In summary, if this action were transferred to the Northern District of

California, Oclaro will recognize significant savings from the convenience of litigating this

matter in its own backyard.

Conversely, because QinetiQ is headquartered in the United Kingdom, it will incur travel

and lodging expenses for its witnesses regardless of where this dispute is litigated.  QinetiQ's

will be required to retain local co-counsel admitted to practice in the Northern District of

California just as it has in the District of Delaware.  (*See* N.D. Cal. Civ. L.R. 11-3).  QinetiQ

retains no cost advantage by litigating this matter in the District of Delaware:  whether this action

remains in the District of Delaware or is transferred to the Northern District of California,

QinetiQ will incur travel and local counsel expenses.

This Court has previously recognized that the implementation of "special local rules for

patent infringement cases," the existence of "established procedures for exploring settlement,"

and "a relatively well developed and predictable body of case law on how [patent] cases are

tried" may reduce the relative cost of litigation in one jurisdiction versus another.  *See ADE

Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001).  The Northern District of

California has implemented Patent Local Rules designed for efficient adjudication of patent

infringement disputes, requires that parties consider alternative dispute resolution early in litigation, and has extensive experience with patent cases.   (*See* N.D. Cal. Patent Rules; N.D. Cal. Civil L.R. 16-8.)

Thus, because it would be more efficient and less expensive to litigate this dispute in the Northern District of California, this factor weighs in favor of transfer.

### g. Court Congestion of the Two Fora Neither Favors Nor Disfavors Transfer

According to the most recent statistics compiled by the Administrative Office of the United States Courts, the difference in time to trial between the District of Delaware and the Northern District of California is only five months:  mean time to trial in the District of Delaware is 25 months, while mean time to trial in the Northern District of California is 30 months.  (Ex. 6.)  However, the time to disposition of a case is slightly longer in the District of Delaware: mean time to termination in the District of Delaware is 11.2 months, while mean time to termination in the Northern District of California is 7.7 months.  (Ex. 7.)  In 2008, a similar number of patent cases were filed in the District of Delaware as the Northern District of California:  187 cases and 169 cases, respectively.  (Ex. 8.)  However, as discussed above in Section IV.B.6, the Northern District of California has adopted Patent Local Rules designed to maximize the efficient resolution of patent infringement cases.

As this Court has recognized, statistics on time to trial "may vary from year to year and can be affected by a variety of factors."  *Mentor Graphics*, 77 F. Supp. 2d at 514.  Thus, the relative court congestion in the District of Delaware as compared to the Northern District of California neither favors nor disfavors transfer.

**h.** **The Northern District of California Has a Stronger Interest in Deciding This Dispute**

The Northern District of California has an interest in deciding disputes that arise within its boundaries.  Most of Oclaro's executive design, development, manufacturing, sales and marketing decisions are made within the borders of the Northern District of California.  (Turin Decl. ¶ 5.)  Many of Oclaro's corporate and non-party witnesses reside within the Northern District of California.  (Turin Decl. ¶¶ 5, 8, 9; Rundle Decl. ¶ 4.)  Seven of Oclaro's nine corporate officers reside in the San Francisco Bay area.  (Turin Decl. ¶ 5.)

Oclaro's incorporation in the State of Delaware is the only connection this dispute has to the District of Delaware.  As this Court has previously recognized, that connection is not enough to prevent transfer.  *See Synthes USA, LLC*, 2009 WL 463977; *APV North America, Inc.*, 295 F. Supp. 2d 393; *Mentor Graphics Corp.*, 77 F. Supp. 2d 505.  QinetiQ is a United Kingdom corporation, not a Delaware corporation.  (Compl. ¶ 2.)  Neither Oclaro nor QinetiQ maintain offices in Delaware.  (Turin Decl. ¶ 4; Ex. 2.)  Oclaro owns no property in Delaware.  (Turin Decl. ¶ 6.)  Oclaro does not manufacture the accused products in Delaware, nor does it sell or ship the accused products to customers located in Delaware.  (Turin Decl. ¶¶ 9, 10.)  None of Oclaro's or QinetiQ's anticipated witnesses are located in Delaware.  (Turin Decl. ¶¶ 5, 8, 9; Rundle Decl. ¶ 4; Exs. A & B to Compl.)   Oclaro has no employees in Delaware.  (Turin Decl. ¶¶ 4, 5, 8, 9.)

On balance, the Northern District of California has a stronger interest in deciding disputes that affect its residents.  Accordingly, this factor weighs in favor of transfer.

> **i.    The Public Policies of the District of Delaware and the Northern District of California Neither Favor nor Disfavor Transfer**

The public policies of the District of Delaware and the Northern District of California neither favor nor disfavor transfer.  This case is early in its lifecycle:  QinetiQ filed its Complaint on May 27, 2009, and Oclaro answered the Complaint and asserted counterclaims on July 16, 2009.  QinetiQ recently filed a Motion to Dismiss Oclaro's counterclaims for declaratory judgments of unenforceability and invalidity of the patents-in-suit on August 7, 2009, so the pleadings are not yet at issue.  The District of Delaware has invested only a minimal amount of judicial resources on this dispute.  Accordingly, this factor neither favors nor disfavors transfer.

## V.    CONCLUSION

After reviewing the applicable facts and applying the *Jumara* factors to them, transfer of this action to the Northern District of California is warranted.  The ***only*** connection between this dispute and the District of Delaware is Oclaro's incorporation in Delaware.  In contrast, the center of Oclaro's corporate activities is in the Northern District of California.  On balance, the convenience of the parties and witnesses, the existence of practical considerations that would expedite and simplify trial if it were to proceed in the Northern District of California, and the local interest the Northern District of California has in resolving disputes that involve its residents, weigh strongly in favor of transferring this litigation to the Northern District of California.  Accordingly, we request that the Court transfer this case to the Northern District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

_____

Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
*Attorneys for Defendant*

OF COUNSEL:

Thomas J. Friel, Jr.
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
(415) 693-2000

Wayne O. Stacy
Carolyn V. Juarez
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
(720) 566-4000

August 19, 2009
3080326

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 2, 2009, upon the following in the manner indicated:

Richard L. Horwitz                                             *VIA ELECTRONIC MAIL*
David E. Moore
D. Fon Muttamara-Walker
POTTER ANDERSON & CORROON LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899

James S. Blank                                                 *VIA ELECTRONIC MAIL*
Stephen J. Elliott
Soumitra Deka
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022-3598

*/s/ Thomas C. Grimm*
_____
Thomas C. Grimm (#1098)