**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QINETIQ LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-372-JAP |
| | ) | |
| OCLARO, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## QINETIQ LIMITED'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

<table>
<tr>
<td></td>
<td>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>D. Fon Muttamara-Walker (#4646)<br>POTTER ANDERSON & CORROON LLP</td>
</tr>
<tr>
<td>OF COUNSEL:</td>
<td>Hercules Plaza, 6th Floor<br>1313 N. Market Street</td>
</tr>
<tr>
<td>James S. Blank<br>Stephen J. Elliott<br>Soumitra Deka<br>Tzung-Lin Fu<br>KAYE SCHOLER LLP<br>425 Park Avenue<br>New York, NY 10022-3598<br>Tel: (212) 836-8000</td>
<td>Wilmington, DE 19899<br>Tel: (302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com<br>fmuttamara-walker@potteranderson.com<br><br>*Attorneys for Plaintiff QinetiQ Limited*</td>
</tr>
</table>

Dated: September 8, 2009
932267/34385

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.  SUMMARY OF ARGUMENT ...................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................. 2

    A.   Background ........................................................................................................ 2

    B.   Oclaro ................................................................................................................ 3

    C.   QinetiQ .............................................................................................................. 7

IV.  ARGUMENT ................................................................................................................. 8

    A.   Applicable Legal Standards ............................................................................... 8

    B.   All Of The Private Interest Factors Favor Maintaining This Case In
        Delaware .......................................................................................................... 10

        1.   QinetiQ's Choice to Litigate in Delaware Is Based on Legitimate
            Reasons and Should Not Be Disturbed .................................................. 10

        2.   Oclaro's Forum Preference and Where the Claim Arose Are Not
            Weighed as Separate Factors in the Transfer Analysis ........................... 13

        3.   Convenience of the Parties Does Not Favor Transfer ............................. 13

        4.   Convenience of Witnesses Does Not Favor Transfer .............................. 16

            a.   The Convenience of Party Witnesses Is Irrelevant ...................... 16

            b.   Oclaro Has Not Shown That There Are Material Non-Party
                Witnesses Who Will Be Unavailable for Trial in Delaware ......... 17

        5.   The Availability of Books and Records Does Not Favor Transfer ........... 19

    C.   The Public Interest Favors Litigating in Delaware ............................................. 20

        1.   A Judgment in This Case Would Be Equally Enforceable in
            Delaware and in California ..................................................................... 20

        2.   Practical Considerations Do Not Favor Transfer ...................................... 20

        3.   This Court Is No More Congested than the Northern District of
            California .............................................................................................. 22

        4.   Local Interest Weighs Against Transfer .................................................. 22

Page

5.   There Are No Issues with Public Policies or Familiarity with The Applicable State Law ................................................................................ 23

V.   CONCLUSION ................................................................................................ 24

## TABLE OF AUTHORITIES

### CASES

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,*
  295 F. Supp. 2d 393 (D. Del. 2002)......................................................................... 15, 20

*Acuity Brands, Inc. v. Cooper Indus., Inc.,*
  C.A. No. 07-444-GMS, 2008 U.S. Dist. LEXIS 58364 (D. Del. July 31,
  2008) ....................................................................................................................... 15, 17, 22

*Affymetrix, Inc. v. Synteni, Inc.,*
  28 F. Supp. 2d 192 (D. Del. 1998)..........................................................................*passim*

*Alcoa Inc. v Alcan Inc.,*
  C.A. No. 06-451-SLR, 2007 U.S. Dist. LEXIS 47652 (D. Del. July 2, 2007)..........*passim*

*Amgen, Inc. v. Ariad Pharms., Inc.,*
  513 F. Supp. 2d 34 (D. Del. 2007) .................................................................................. 10

*Auto Techs. Int'l., Inc. v. Am. Honda Motor Co., Inc.,*
  C.A. No. 06-187-GMS, 2006 U.S. Dist. LEXIS 92249 (D. Del. Dec. 21,
  2006) ................................................................................................................................. 15

*Bergman v. Brainin,*
  512 F. Supp. 972 (D. Del. 1981) ...................................................................................... 11

*Boston Scientific Corp. v. Johnson & Johnson Inc.,*
  532 F. Supp. 2d 648 (D. Del. 2008).................................................................................. 12

*Cisco Sys. Inc. v. GPNE Corp.,*
  C.A. No 07-671-SLR, 2008 U.S. Dist. LEXIS 31877 (D. Del. Apr. 17, 2008) .............. 14

*Cont'l Cas. Co. v. Am. Home Assurance Co.,*
  61 F. Supp. 2d 128 (D. Del. 1999)............................................................................. 11, 12

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,*
  C.A. No. 01-199, 2001 U.S. Dist. LEXIS 20803, 2001 (D. Del. Nov. 28,
  2001) ................................................................................................................................. 12

*Dish Network Corp. v. Tivo, Inc.,*
  C.A. No. 08-327-JJF, 2009 U.S. Dist. LEXIS 44722 (D. Del. May 28, 2009) .......... 10, 13

*In re Genentech, Inc.,*
  566 F.3d 1338 (Fed. Cir. 2009)..................................................................................... 9-10

Page

*In re M.L.-Lee Acquisition Fund II, L.P.,*
  816 F. Supp. 973 (D. Del. 1993).............................................................. 12

*In re TS Tech USA Corp.,*
  551 F.3d 1315 (Fed. Cir. 2008)............................................................ 9, 10

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) .................................................................. 9

*Inter-City Products Corp. v. Ins. Co. of North Am.,*
  C.A. No. 90-717-SLR, 1993 WL 18948 (D. Del. Jan. 26, 1993) ..................... 17

*Jumara v. State Farm Ins. Co.,*
  55 F.3d 873 (3d Cir. 1995)............................................................*passim*

*Leonard v. Stemtech Health Scis., Inc.,*
  C.A. No. 08-67-JJF, 2008 U.S. Dist. LEXIS 103439 (D. Del. Dec. 19, 2008) .........*passim*

*Magsil Corp. v. Seagate Tech.,*
  C.A. No. 08-940, 2009 U.S. Dist. LEXIS 37511 (D. Del. Apr. 30, 2009) ........... 13, 15, 22

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,*
  77 F. Supp. 2d 505 (D. Del. 1999)................................................. 10, 15, 16, 21

*Nice Sys., Inc. v. Witness Sys., Inc.,*
  C.A. No. 06-311-JJF, 2006 U.S.  Dist. LEXIS 74642 (D. Del. Oct. 12, 2006).......... 10, 12

*Nihon Tsushin Kabushiki Kaisha v. Davidson,*
  595 F. Supp. 2d 363 (D. Del. 2009)............................................... 10, 11

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,*
  No. 06-505-SLR, 2006 U.S. Dist. LEXIS 91969 (D. Del. Dec. 19, 2006)...............*passim*

*Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.,*
  C.A. No. 09-022-SLR, 2009 U.S. Dist. LEXIS 27959 (D. Del. Apr. 2, 2009)  9, 11, 12, 16

*Safety Braking Corp. v. Six Flags Theme Parks Inc.,*
  C.A. No. 07-127-JJF, 2009 U.S. Dist. LEXIS 49883 (D. Del. June 9, 2009) .............. 9, 10

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.,*
  607 F. Supp. 2d 769 (E.D. Tex. 2009)........................................................ 10

*Synthes USA, LLC v. Spinal Kinetics, Inc.,*
  C.A. No. 08-838-SLR, 2009 WL 463977 (D. Del. Feb. 24, 2009)..................... 15

*Tristrata Tech., Inc. v. Emulgen Labs., Inc.,*
  537 F. Supp. 2d 635 (D. Del. 2008)............................................................ 23

Page

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,*
 775 F. Supp. 759 (D. Del. 1991)............................................................ 11, 12, 21

## STATUTES

28 U.S.C. § 1400(b) ........................................................................................ 8

28 U.S.C. § 1404(a) ...................................................................................... 8-10

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On May 27, 2009, QinetiQ Limited ("QinetiQ") brought this action against Oclaro, Inc.

("Oclaro") for infringement of U.S. Patent Nos. 5,410,625 (the "'625 patent") and 5,428,698 (the

"'698 patent"). (*See* D.I. 1, Compl.)  After receiving a thirty-day extension, Oclaro filed its

Answer and Counterclaims on July 16, 2009.  (D.I. 9.)  QinetiQ answered Oclaro's

Counterclaims on August 7, 2009, except for Oclaro's Third and Fourth Counterclaims based on

laches and equitable estoppel.  (D.I. 12.)  Contemporaneously, QinetiQ moved to dismiss

Oclaro's Third and Fourth Counterclaims and to strike its Eighth Affirmative Defense (D.I. 10.),

which motion is fully briefed and pending.  Almost three months into this litigation, on August

19, 2009, Oclaro filed a Motion to Transfer Venue, requesting that this action be transferred to

the Northern District of California.  (D.I. 14.)  QinetiQ submits this memorandum in opposition

to Oclaro's Motion to Transfer.

## II.     SUMMARY OF ARGUMENT

The question of whether to transfer this case to the Northern District of California is not a

close one.  QinetiQ's decision to file this case in the District was based on legitimate and

rationale reasons, namely, Oclaro is incorporated in Delaware and it is undisputed that this Court

has personal jurisdiction and venue over Oclaro.  Under well-established law of the Third

Circuit, QinetiQ's choice of this forum is to be given "paramount consideration" and is not to be

disturbed unless the balance of factors weigh "strongly" in Oclaro's favor.

The balance of private and public interest factors set forth in *Jumara v. State Farm Ins.*

*Co.*, 55 F.3d 873 (3rd Cir. 1995) do not weight in Oclaro's favor, let alone "strongly" in its favor.

The convenience of Oclaro's party witnesses, which is the centerpiece of Oclaro's argument, is

irrelevant under Third Circuit law.  And, Oclaro has not identified any material third party fact

witnesses who are unavailable to testify in the District and can be compelled to testify in the

Northern District of California.  Thus, the convenience of witnesses factor does not weigh in Oclaro's favor.  The balance of the private and public interest factors either weigh in QinetiQ's favor or are neutral.

In short, there is no legal or factual basis to transfer this case to the Northern District of California.  Oclaro's motion should be denied.

## III.   STATEMENT OF FACTS

### A.   Background

This case involves Oclaro's infringement of two QinetiQ patents: U.S. Patent No. 5,410,625, entitled "Optical Device for Beam Splitting and Recombining," and U.S. Patent No. 5,428,698, entitled "Signal Routing Device." (*See* D.I. 1, Compl. ¶¶ 6-9, 14-17.)  These patents cover multi-mode interference ("MMI") devices including certain multi-mode waveguides, which may be used to split, combine, or otherwise route optical signals.  (*See* D.I. 1, Compl. Ex. A-B.)  The devices covered by the patents-in-suit can be either stand-alone components or co-packaged into larger modules.  (*See* D.I. 1, Compl. ¶¶ 8, 16; *see, e.g.,* Oclaro.com, Bookham: 10Gb/s Compact InP Mach Zehnder Product Family, http://www.bookham.com/ datasheets/transmitters/LMC10NEG.cfm (last visited Aug. 25, 2009), a copy of which is attached hereto as Exhibit 1 .)  These products are used for fiber optic communications.  (*See id.*)  A photograph of one of accused products is reproduced below:



Oclaro's accused LMC10NEG optical
component product

(Source: Bookham, LMC10NEG Data Sheet
(2007), http://www.bookham.com/documents/
datasheets_tnl/LMC10NEG_14Feb07.pdf, the
relevant page of which is attached hereto as Ex.
2)

**B.    Oclaro**

Oclaro is a Delaware corporation with its principal place of business in San Jose,

California, and offices throughout North America, Europe and Asia.  (D.I. 9, Answer ¶ 3;

Oclaro.com, Oclaro - Locations, http://oclaro.com/locations.php. (last visited Sept. 8, 2009), a

copy of which is attached hereto as Ex. 3.)  Created from an April 2009 merger between

Bookham, Inc. ("Bookham") and Avanex Corp., Oclaro is, in its own words, "one of the largest

providers to the long-haul and metro markets, and the fourth largest provider of optical

components and subsystems to the fiber optics market[.]"  (Oclaro.com, Oclaro Company

Overview, http://oclaro.com/company_overview.php (last visited Aug. 26, 2009), a copy of

which is attached hereto as Ex. 4; *see also* D.I. 16, Declaration of Jerry Turin ¶ 3 ("Turin Dec.");

Press Release, Bookham and Avanex Close Merger (Apr. 27, 2009) ("Apr. 27, 2009 Press

Release"), attached hereto as Ex. 5.)  According to its CEO, Alain Couder, Oclaro is "a well

capitalized, liquid company ... [w]ith substantial combined cash and no outstanding debt, ...

[and] a strong balance sheet[.]"  (Ex. 5, Apr. 27, 2009 Press Release.)  For its fiscal year ended

June 27, 2009, Oclaro had revenues of almost $211 million.  (Annual Report Pursuant to Section

13 or 15(d) of the Securities Exchange Act of 1934 for the Fiscal Year Ended June 27, 2009 at

36) (the "2009 Annual Report"), relevant pages attached hereto as Ex. 6.)

Contrary to its assertions, Oclaro does not have "deep roots in the San Francisco Bay

area[.]" (D.I. 15, Def.'s Br. Mot. Transfer 4.)  The portion of Oclaro's business that is

implicated by the patents-in-suit is from the former Bookham. (*See, e.g.,* Oclaro.com, Bookham:

10Gb/s Compact InP Mach Zehnder Product Family, http://www.bookham.com/
datasheets/transmitters/LMC10NEG.cfm (last visited Aug. 25, 2009), a copy of which is
attached hereto as Exhibit 1.)  Bookham was originally a U.K. corporation—Bookham
Technology plc—which reincorporated in the U.S. as Bookham, Inc. in only 2004.  (*See* Press
Release, Bookham, Inc. Reincorporation in the United States (Sept. 10, 2004), attached hereto as
Exhibit 7; Press Release, Bookham Technology plans to reincorporate in the United States (June
24, 2004), attached hereto as Exhibit 8.)  Prior to its change of domicile, Bookham was
headquartered in Abingdon, U.K.  (*See* Bookham Technology plc Annual Report 2003 at 60;
relevant pages attached hereto as Exhibit 9.)  Oclaro's "roots," therefore, are planted in the
United Kingdom, not in California.[1]

  Most, if not all, of the persons who are knowledgeable about Oclaro/Bookham's accused
products and history of dealings with QinetiQ are also located in the United Kingdom.  In
particular, as admitted by Oclaro, the design, development, sales and marketing activities for
Oclaro's accused MMI products are conducted at its Caswell, U.K. and Paignton, U.K. offices,
in addition to its San Jose office.  (*See* D.I. 16, Turin Decl. ¶ 8; Oclaro.com, Oclaro - European
Locations, http://www.oclaro.com/locations.php?content=locations_europe (last visited Aug. 26,
2009), a copy of which is attached hereto as Exhibit 10.)  Furthermore, it is undisputed that the
accused products are manufactured in Caswell, U.K., and assembled in Shenzhen, China.  (*See*
D.I. 9, Answer ¶¶ 8, 16; D.I. 16, Turin Decl. ¶ 9.)  The Caswell, U.K. facility, in particular, is
"where chip development and R&D for many Oclaro transmission solutions [including the

---

[1] The Statement in the Turin Declaration that "Oclaro's United States offices are located in San
Jose, California; Fremont, California; and Horseheads, New York" (D.I. 16, Turin Dec. ¶ 4)
appears to be partially incorrect and overstates Oclaro's California presence.  According to
Oclaro's 2009 Annual Report, its location in Fremont, California is "unused" and "either
subleased or marketed to sublease."  (*See* Ex. 6 at 30, 2009 Annual Report.)

accused products] is carried out[.]" (*See* Ex. 10, Oclaro - European Locations.)  Thus, it is

logical to conclude that the Oclaro employees who are most knowledgeable about the design,

development, *and* manufacture of its accused products are located in Caswell, U.K.  Oclaro has

not proffered any evidence to the contrary.

     Also located in the U.K. are the Oclaro/Bookham personnel who have communicated

with QinetiQ about the patents-in-suit, and can testify about that history, upon which Oclaro

heavily relies to advance its laches and equitable estoppel defense and counterclaims.  According

to Oclaro, the relevant history of dealings between the parties began on April 25, 2000, when

QinetiQ's predecessor, the Defense Evaluation and Research Agency ("DERA"), wrote to

Marconi Optical Components ("Marconi"), a U.K. company Bookham later acquired,

referencing and attaching the '625 patent (but not the '698 patent). (*See* D.I. 18, Def.'s Opp. Br.

Mot. Dismiss 3.)  That letter was sent from former DERA/QinetiQ patent attorney, Arthur

Williams, in Malvern, U.K., to Marconi's D.G. Rouse in Chelmsford, U.K.  (*See id.* at Ex. 1.)

As purported evidence in support of its laches and equitable estoppel defenses, Oclaro cites to

this and to six subsequent letters, in which QinetiQ referenced the '625 patent and/or the '698

patent to Oclaro/Bookham and its predecessors.  (*See id.* at 3, Exs. 1-7.).  Among these letters,

three were exchanged with Bookham's Haydn Jones in Abingdon, U.K. (*See id.* at Exs. 2-4.)

Then, on August 1, 2007, QinetiQ wrote to Bookham's then President and CEO, Peter Bordui, at

the redomiciled Bookham's San Jose headquarters, pointing out that a number of QinetiQ's

patents, including the patents-in-suit, may be relevant to Bookham's products.  (*See id.* at Ex.

5.)[2]  This led to some correspondence between QinetiQ's Licensing Director, Anthony W. Higgs

---

[2] Mr. Bordui is no longer an employee of Oclaro, having been replaced in August 2007 by
Oclaro's current President and CEO, Alain Couder.

in Malvern, U.K., and Bookham's former General Counsel, Thomas Kelly in Ottawa, Canada, and his successor, Catherine Rundle in San Jose, California, discussing Bookham's infringement of QinetiQ's patents. (*See, e.g., id.* at Exs. 6-7; Letter from Thomas Kelley to Anthony W. Higgs (Sept. 14, 2007) ("Kelley Letter"), attached hereto as Exhibit 11; Letter from Catherine Hunt Rundle to Anthony W. Higgs (Jan. 23, 2008)[3] ("Rundle Letter"), attached hereto as Exhibit 12.) Ms. Rundle, and possibly Mr. Kelley, were advised by Bookham's "Director of IP (based in UK)" on "the technical aspects" involved. (*See* Ex. 12, Rundle Letter.)[4]

In sum, the communications between DERA/QinetiQ and Marconi/Bookham/Oclaro, upon which Oclaro bases its laches and estoppel defense and counterclaims, happened mainly between persons in the U.K. The roles of Bookham/Oclaro employees located in the Northern District of California appear to be, at most, minor: In the case of Mr. Bordui, he received a letter from QinetiQ in his capacity as Bookham's former President and CEO, but then apparently delegated the matter to the company's former General Counsel, Mr. Kelly, in Canada. (*See* D.I. 18, Def.'s Opp. Br. Mot. Dismiss Ex. 5; Ex. 11, Kelley Letter.) In the case of Ms. Rundle, her responses to QinetiQ's inquiries were admittedly based on advice from Bookham's U.K.-based Director of IP. (*See* Ex. 12, Rundle Letter.)

---

[3] Ms. Rundle's letter was misdated January 23, 2007 (rather than January 23, 2008), even though it references, and therefore must post-date, Dr. Higgs' letter dated December 17, 2007. (*See* Ex. 12, Rundle Letter.)

[4] The referenced "Director of IP (based in UK)" is most likely Haydn Jones, who works and resides in the U.K. *See, e.g.,* D.I. 18, Def.'s Opp. Br. Mot. Dismiss, Exs. 2-4 (correspondence with Haydn Jones, Intellectual Property Manager, at Bookham's Abingdon, UK office); *see also* LinkedIn.com, "Haydn Jones, Director Intellectual Property at Oclaro, Reading, United Kingdom," http://www.linkedin.com/pub/haydn-jones/1/ba3/962 (last visited Sept. 8, 2009), attached hereto as Exhibit 13; Plaxo.com, "Haydn Jones, Director Intellectual Property, Bookham Technology plc[,] Towcester, Northamptonshire, UK," http://www.plaxo.com/directory/profile/25770350699/7fd9ceb1/Haydn/Jones (last visited Sept. 8, 2009), attached hereto as Exhibit 14.

Oclaro's assertion that "[t]he majority of Oclaro's management executives reside in [sic] within the Northern District of California" (D.I. 15, Def.'s Br. Mot. Transfer 10; D.I. 16, Turin Decl. ¶ 5) is irrelevant to this motion and does nothing to detract from the fact that those Oclaro employees with *relevant knowledge* about the patents-in-suit, the accused products, and the course of dealing between the parties are mostly located in the United Kingdom.  Indeed, according to Oclaro's website, the eight members of Oclaro's "Management Team" include the company's President and Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Executive Vice President of Sales and Marketing Communications, General Counsel and Corporate Secretary, and Executive Vice President of Human Resources.  (*See* Oclaro.com, Management Team, http://www.oclaro.com/ management_team.php (last visited Aug. 24, 2009), a copy of which is attached hereto as Ex. 15.)  Six of these eight executives have only been with Oclaro (or its predecessors) since 2007 or later.  (*See id.*)  Oclaro has provided no evidence that any of these executives has any knowledge about the issues in this case, including Oclaro's accused products vis-à-vis the patents-in-suit and—as to Oclaro's laches and estoppel defense and counterclaims—the history of Oclaro's dealings with QinetiQ.

### C.   QinetiQ

QinetiQ is a defense and security company registered under the laws of the United Kingdom with offices throughout the U.K.  (D.I. 1, Compl. ¶ 2.)  It is engaged in the research and development of various technologies, including optical components and MMI devices.  (*Id.*)

The inventors of the patents-in-suit are Richard M. Jenkins and John M. Heaton.  Mr. Jenkins is a current QinetiQ employee based Malvern, Worcestershire, U.K., where he also resides.  Mr. Heaton is no longer a QinetiQ employee.  He is a consultant for QinetiQ in connection with this litigation, and also resides in Malvern, Worcestershire, U.K.  (*See* Declaration of Anthony W. Higgs ("Higgs Dec.") ¶¶ 4-6, submitted herein).

The QinetiQ employees who were involved in the prosecution and licensing of the patents-in-suit are all in the U.K. This includes Dr. Arthur Williams, former Patent Attorney for QinetiQ, and Dr. Anthony W. Higgs, Licensing Director of QinetiQ, who had main responsibility in communicating with Marconi/Bookham/Oclaro on issues involving the '625 patent and/or the '698 patent. (*See* Section III.B., *supra.*) Dr. Williams is now retired and works part-time under contract for QinetiQ. (Higgs Dec. ¶ 9). He resides in Malvern, Worcestershire, U.K. *Id.* Dr. Higgs is a current QinetiQ employee, who works and resides in Malvern, Worcestershire, U.K. *Id.* ¶ 3. All other current or former QinetiQ employees who appear on the correspondence upon which Oclaro relies for its equitable estoppel and laches defenses and counterclaims reside in the U.K. *Id.* ¶¶ 8-11.

## IV.   ARGUMENT

### A.   Applicable Legal Standards

28 U.S.C. § 1404(a) permits a federal district court to transfer a civil action to another district where it might have been brought, "[f]or the convenience of parties and witnesses, [and] in the interest of justice[.]" A civil action for patent infringement may be brought either "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The parties do not dispute that this District and the Northern District of California are both proper venues in which this litigation may be brought. (*See* D.I. 1, Compl. ¶ 5; D.I. 9, Answer ¶ 5; D.I. 15, Def.'s Br. Mot. Transfer 8.) The only question is whether the case should be transferred to the Northern District of California.

In determining whether to transfer a case pursuant to § 1404(a), courts in the Third Circuit balance the private and public interest factors outlined in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). With regard to the private interests, courts consider: (1)

plaintiff's choice of forum; (2) defendant's forum preference; (3) where the claim arose; (4) the

convenience of the parties as indicated by their relative physical and financial condition; (5) the

convenience of the witnesses — but only to the extent that the witnesses may actually be

unavailable for trial in one of the fora; and (6) the location of books and records, also limited to

the extent that they could not be produced in the alternative forum. *Id.* at 879.  As to the public

interests, courts consider: (1) enforceability of the judgment; (2) practical considerations that

could make the trial easy, expeditious, or inexpensive; (3) court congestion; (4) local interest in

the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the

applicable state law in diversity cases. *Id.* at 879-80.  The movant bears the burden of

establishing the need for transfer. *Id.* at 879.

Applying the *Jumara* factors, this Court has generally denied motions for transfer unless:

"(1) there is no *bona fide* relationship between Delaware and the defendant; (2) there is a related

first-filed case in another district; or (3) the defendant is truly a regional enterprise." *Quantum

Loyalty Sys., Inc. v. TPG Rewards, Inc.*, C.A. No. 09-022-SLR, 2009 U.S. Dist. LEXIS 27959, at

\*5-\*6 (D. Del. Apr. 2, 2009).  None of these circumstances is present here, and Oclaro does not

argue as much.[5]

_____

[5] Oclaro attempts to make much of the Federal Circuit's recent decisions in *In re TS Tech USA
Corp.*, 551 F.3d 1315 (Fed. Cir. 2008), and *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir.
2009).  (*See* D.I. 15, 2–3.)  The Federal Circuit's decisions in both of those cases are of no
moment to this case and this motion.  To begin with, *TS Tech* and *Genentech* involved
application of the law of the Fifth Circuit, not the law of the Third Circuit. *See TS Tech*, 551
F.3d at 1319 (applying Fifth Circuit law with respect to a motion to transfer venue); *Genentech*,
566 F.3d at 1341 (same).  With respect to transfer law of these Circuits, there appear to be
important differences.  For example, unlike in the Third Circuit, the Fifth Circuit does not give
"paramount consideration" to plaintiff's choice of forum. *Compare In re Volkswagen of Am.,
Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("plaintiff's choice of venue is not a distinct factor in the
venue transfer analysis") *and TS Tech*, 551 F.3d at 1320 ("Fifth Circuit precedent clearly forbids
treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis"), *with, e.g.,
Safety Braking*, 2009 U.S. Dist. LEXIS 49883 at \*6 ("a plaintiff's choice of a proper forum is a

**B.      All Of The Private Interest Factors Favor Maintaining This Case In Delaware**

**1.      QinetiQ's Choice to Litigate in Delaware Is Based on Legitimate Reasons and Should Not Be Disturbed**

Oclaro essentially ignores the fact that "'[i]t is black letter law that a plaintiff's choice of a proper forum is a *paramount consideration* in any determination of a transfer request, and that choice should not be lightly disturbed.'" *Safety Braking Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-JJF, 2009 U.S. Dist. LEXIS 49883, at *6 (D. Del. June 9, 2009) (emphasis added) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). *See also, e.g.*, *Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 372 (D. Del. 2009) (same); *Dish Network Corp. v. Tivo, Inc.*, Civ. A. No. 08-327-JJF, 2009 U.S. Dist. LEXIS 44722, at *5 (D. Del. May 28, 2009) ("The plaintiff's choice of forum is entitled to 'paramount consideration.'"); *Leonard v. Stemtech Health Scis., Inc.*, Civ. A. No. 08-67-JJF, 2008 U.S. Dist. LEXIS 103439, at *7 (D. Del. December 19, 2008) (same); *Amgen, Inc. v. Ariad Pharms., Inc.*, 513 F. Supp. 2d 34, 45 (D. Del. 2007) (same) (citing *Nice Sys., Inc. v. Witness Sys., Inc.*, C.A. No. 06-311-JJF, 2006 U.S. Dist. LEXIS 74642, at *4-*5 (D. Del. Oct. 12, 2006)).

---

paramount consideration in any determination of a transfer request") (citing *Shutte*, 431 F.2d 22 (3d Cir. 1970)). Second, unlike in the Fifth Circuit, the Third Circuit does not consider the convenience of party witnesses in its Section 1404 analyses, and considers the convenience of non-party fact witnesses only to the extent they may be unable to testify. *Compare Mentor Graphics Corp. v. Quickturn Design Sys.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999) ("convenience of witnesses that are employees of a party carries no weight") *and Jumara*, 55 F.3d at 879 (noting one factor as "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora") (internal citations omitted), *with Genentech*, 566 F.3d at 1345 (finding that under Fifth Circuit law, convenience factor for party witnesses and non-party witnesses favored transfer). Moreover, unlike in this case, neither *TS Tech* nor *Genentech* involved a party moving to transfer a case out from a district court located in the transferor's state of incorporation. *See TS Tech*, 551 F.3d at 1318 (noting that one of the facts raised in connection with the motion to transfer was that "none of the parties were incorporated in Texas"); *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 607 F. Supp. 2d 769, 773 (E.D. Tex. 2009) (noting that "Genentech is a corporation incorporated under the laws of Delaware . . . .", *i.e.*, not a Texas corporation), *rev'd by Genentech*, 566 F.3d 1338 (Fed. Cir. 2009).

In view of the deference given to plaintiff's choice of forum, a defendant moving to transfer must "establish that the balance of the interests weighs *strongly* in favor of the requested transfer." *Nihon Tsushin*, 595 F. Supp. 2d at 371 (emphasis added) (citing *Shutte*, 431 F.2d at 25; *Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999)); *see also, e.g., Quantum Loyalty*, 2009 U.S. Dist. LEXIS 27959, at *3 ("The burden of establishing the need to transfer rests with the movant to establish that the balance of convenience of the parties and witnesses strongly favors the defendants.") (internal quotations and citations omitted).  In other words, a transfer should be denied if it merely shifts the inconvenience to the plaintiff, if the factors are evenly balanced, or if the factors weigh only slightly in favor of transfer. *See Nihon Tsushin*, 595 F. Supp. 2d 363, 371 (D. Del. 2009) ("A transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.") (citing *Shutte*, 431 F.2d at 25; *Cont'l Cas.*, 61 F. Supp. 2d at 131 (D. Del. 1999)); *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991) ("Th[e] Court will not grant a transfer merely because a different forum is more convenient for the defendants, or if it will simply shift the inconvenience to the other parties.") (internal citations omitted); *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981) ("If transfer will merely shift the inconvenience to plaintiffs, it should not be granted.") (citing *Residex Corp. v. Farrow*, 374 F. Supp. 715, 722 (E.D. Pa.1974), *aff'd mem.*, 556 F.2d 568 (3d Cir. 1977) *and sub nom. Kornfeld v. Residex Corp.*, 556 F.2d 567 (3d Cir. 1977)).

"The deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason .... [Even where] the plaintiff has not chosen its 'home turf' ..., the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests

of justice weigh strongly in favor of transfer." *Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 654 (D. Del. 2008) (citing *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, C.A. No. 01-199, 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001); *Continental Casualty*, 61 F. Supp. 2d at 131 (D. Del. 1999); *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993)); *Quantum Loyalty*, 2009 U.S. Dist. LEXIS 27959, at *3-*4; *Alcoa Inc. v Alcan Inc.*, C.A. No. 06-451-SLR, 2007 U.S. Dist. LEXIS 47652, at *6 (D. Del. July 2, 2007); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, C.A. No. 06-505-SLR, 2006 U.S. Dist. LEXIS 91969, at *6 (D. Del. Dec. 19, 2006); *see also Nice Systems*, 2006 U.S. Dist. LEXIS 74642, at *4-*5 ("The Plaintiffs' choice of forum is entitled to 'paramount consideration[,]' ... [and] should not be lightly disturbed if there is a legitimate, rational reason to litigate away from the corporation's 'home turf.'") (citing *Shutte*, 431 F.2d at 25; *Waste Distillation*, 775 F. Supp. at 764); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 192, 199 (D. Del. 1998) ("Regardless of whether the plaintiff is leaving or remaining on his 'home turf' to file suit in Delaware, the degree of consideration paid to this choice stays the same-it is 'paramount.'") (citing *Shutte,* 431 F.2d at 25; *Gen. Instrument Corp. v. Mostek Corp.*, 417 F. Supp. 821, 822-23 (D. Del. 1976)).

QinetiQ's decision to file this litigation in Delaware was indisputably based on rational and legitimate reasons. As a foreign corporation seeking to enforce its U.S. patent rights, QinetiQ does not have *any* "home turf" upon which to pursue its claims against Oclaro.[6] Therefore, it chose to litigate in Delaware, the state in which Oclaro is incorporated and in which

---

[6] "In the District of Delaware, 'home turf' is defined as the forum closest to the plaintiff's residence or principal place of business which can exercise personal jurisdiction over the defendant at the time the lawsuit is filed." *Affymetrix, Inc. v. Synteni*, 28 F. Supp. 2d 192, at n.6.

personal jurisdiction and venue is undisputed.  This Court has recognized that "[t]he fact that [the defendant] is incorporated in Delaware provides a rational and legitimate reason for [the plaintiff] to sue [it] in Delaware." *Dish Network*, 2009 U.S. Dist. LEXIS 44722, at *5 (citing *Textron Innovations, Inc. v. Toro Co.*, C.A. No. 05-486-GMS, 2005 U.S. Dist. LEXIS 23561, at *4-*5 (D. Del. Oct. 14, 2005)); *see also Leonard*, 2008 U.S. Dist. LEXIS 103439, at *8 (finding plaintiff's decision to litigate "in a state near his home state that also happens to be [defendant's] state of incorporation ... highly reasonable."). Therefore, QinetiQ's choice of forum should not be disturbed unless Oclaro can establish that the balance of the *Jumara* factors weigh *strongly* in its favor.

### 2.    Oclaro's Forum Preference and Where the Claim Arose Are Not Weighed as Separate Factors in the Transfer Analysis

As this Court explained in *Affymetrix*, defendant's preference for a forum and whether the claim arose elsewhere are not weighed as their own distinct factors. *See* 28 F. Supp. 2d at 201 (stating that "the [defendant's] preference for a forum" and "the fact that the claim arose elsewhere" "carr[y] no weight in the 'balance of convenience' analysis."). Instead, they "collapse[] into other portions of the *Jumara* analysis." *Id.* That is, the court should "weigh the reason or reasons behind the [defendant's] preference" and examine whether the parties, witnesses and evidence are located elsewhere, to determine whether the balance tips "strongly in favor of transfer." *See id.* at 201-02.  These convenience factors are discussed in the Sections IV.B.4 and 5 below.

### 3.    Convenience of the Parties Does Not Favor Transfer

As a Delaware corporation doing business on a global basis, Oclaro will not be inconvenienced if required to litigate in Delaware.  Convenience of the parties "is relevant only as it relates to the defendants' physical and financial condition[.]" *Magsil Corp. v. Seagate*

*Tech.*, C.A. No. 08-940, 2009 U.S. Dist. LEXIS 37511, at *7 (D. Del. Apr. 30, 2009) (citing

*Jumara*, 55 F.3d at 879).  Defendants who are "large national and international corporations, ...

generating billions of dollars of annual revenue ... will not suffer meaningful hardship if required

to litigate in Delaware." *Id.*; *see also Cisco Sys. Inc. v. GPNE Corp.*, C.A. No 07-671-SLR,

2008 U.S. Dist. LEXIS 31877, at *1, *7 (D. Del. Apr. 17, 2008) (denying motion to transfer

where the defendant is a national corporation incorporated in Delaware; stating that "absent a

truly regional defendant or critical witnesses that cannot be compelled to attend trial, Delaware

(especially for Delaware corporations ...) is at least as convenient as any other forum.").

    In particular, it will not burdensome for a Delaware corporation doing world-wide

business, such as Oclaro, to litigate in Delaware. *Alcoa*, 2007 U.S. Dist. LEXIS 47652, at *13

("the travel expenses and inconveniences incurred for trial [in Delaware], by Delaware

defendants conducting world-wide business, is not overly burdensome."); *Pernod Ricard*, 2006

U.S. Dist. LEXIS 91969, at *9 (same); *see also Leonard*, 2008 U.S. Dist. LEXIS 103439, at *10

("because [defendant] is conducting business on a national scale it should not be considered

overly burdensome for it to litigate in Delaware, which also is its place of incorporation.").  Any

complaints about litigating here are "outweighed by the fact that [Oclaro] has enjoyed the

benefits and protections of incorporation in Delaware and that the State has an interest in

litigation regarding companies incorporated within its jurisdiction." *Pernod Ricard*, 2006 U.S.

Dist. LEXIS 91969, at *9 (denying motion to transfer where the only connection to Delaware is

the fact that defendant is incorporated here, while the witnesses, including elderly and frail

individuals, reside in Florida, and the documents and affected consumers are all located in

Florida); *Alcoa*, 2007 U.S. Dist. LEXIS 47652, at *11 (denying motion to transfer where three of

the four defendants are Delaware corporations, and the fourth defendant is a Canadian

corporation); *see also Acuity Brands, Inc. v. Cooper Indus., Inc.*, C.A. No. 07-444-GMS, 2008 U.S. Dist. LEXIS 58364, at *5 (D. Del. July 31, 2008) ("Having received the benefits of Delaware incorporation, a defendant cannot now complain that another corporation has chosen to sue it here."); *Auto Techs. Int'l., Inc. v. Am. Honda Motor Co., Inc.*, C.A. No. 06-187-GMS, 2006 U.S. Dist. LEXIS 92249, at *5-*6 (D. Del. Dec. 21, 2006) (same).

As established above, Oclaro is a Delaware corporation with a global footprint. (*See* D.I. 9, Answer ¶ 3; Ex. 3, Oclaro - Locations.) By its own admission, it is "a well capitalized, liquid company" generating hundreds of millions of dollars of revenue a year. (*See* Ex. 5, Apr. 27, 2009 Press Release; Ex. 6, 2009 Annual Report at 36.) Given its size and financial strength, Oclaro will suffer no hardship if required to litigate this case in Delaware. *See Magsil*, 2009 U.S. Dist. LEXIS 37511, at *7. Any actual or perceived inconvenience is outweighed by the fact that Oclaro, in choosing to incorporate here, has enjoyed the benefits and protections of this State.[7] *See Pernod Ricard*, 2006 U.S. Dist. LEXIS 91969, at *9. Therefore, this factor does not favor transfer. Indeed, since there is no related first-filed case pending in the Northern District of California, Oclaro's *bona fide* relationship with Delaware as its corporate citizen, taken together

---

[7] Oclaro cites to three cases for the proposition that its incorporation in Delaware should not "prevent" transfer. (D.I. 15, Def.'s Br. Mot. Transfer 6.) These cases are inapposite. *See Synthes USA, LLC v. Spinal Kinetics, Inc.*, C.A. No. 08-838-SLR, 2009 WL 463977, at *1 (D. Del. Feb. 24, 2009) (granting transfer because defendant, as a privately-held company whose only office is in the transferee forum, in which discovery has begun, a trial date is set, and mediation has been ordered); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 509, 511-13 (D. Del. 1999) (granting transfer to the Northern District of California, where both parties are located on the West Coast, there are key non-party witnesses within the transferee forum's subpoena power, a transfer would obviate a dispute as to the court's personal jurisdiction over a third-party defendant, and a "mirror image" action involving some of the same issues parties was pending before the Northern District of California).

with its global stature, weighs against transfer. *See Quantum Loyalty Systems*, 2009 U.S. Dist.

LEXIS 27959, at \*5-\*6 ("motions for transfer generally will not be granted unless: (1) there is no

*bona fide* relationship between Delaware and the defendant; (2) there is a related first-filed case

in another district; or (3) the defendant is truly a regional enterprise[;]" finding a *bona fide*

relationship to Delaware where defendant is a Delaware corporation.").

### 4.    Convenience of Witnesses Does Not Favor Transfer

The crux of Oclaro's inconvenience argument lies in its assertion that its party witnesses

and non-party witnesses are within the subpoena power of the Northern District of California,

and not this Court. (D.I. 15, Def.'s Br. Mot. Transfer 10-12.)  In deciding a transfer motion,

courts in this Circuit consider the convenience of witnesses "only to the extent that the witnesses

may actually be unavailable for trial in one of the fora[.]"  *Jumara*, 55 F.3d at 879.  As explained

below, Oclaro has completely failed to show that there are material witnesses who will be

unavailable to testify in Delaware.

#### a.    *The Convenience of Party Witnesses Is Irrelevant*

"[T]he convenience of witnesses that are employees of a party carries *no weight* [in the

transfer analysis] because the parties are obliged to procure their attendance at trial."[8]  *Mentor*

*Graphics*, 77 F. Supp. 2d at 510 (emphasis added); *Affymetrix*, 28 F. Supp. 2d at 203 ("Party

witnesses or witnesses who are employed by a party carry no weight in the 'balance of

---

[8] Citing *Mentor Graphics* and *Affymetrix*, Oclaro subtly misconstrues these cases as giving the convenience of party witnesses such as employees "less"—but implicitly "some"—weight in the transfer analysis. (*See* D.I. 15, Def.'s Br. Mot. Transfer 11.)  Oclaro then goes on to argue that its corporate witnesses reside within the transferee court's subpoena power, while QinetiQ's inventor witnesses reside in the United Kingdom, concluding that the convenience of witnesses "weighs heavily in favor of transfer." (*See id.* at 11-13.)  The case law, however, is clear that the convenience of party witnesses carries "no weight." *See Mentor Graphics*, 77 F. Supp. 2d at 510; *Affymetrix*, 28 F. Supp. 2d at 203.  Therefore, the location of Oclaro's corporate witnesses and QinetiQ's inventor witnesses should not be considered in this Court's analysis.

convenience' analysis since each party is … obligated to procure the attendance of its own employees for trial."); *see also Acuity Brands*, 2008 U.S. Dist. LEXIS 58364, at *7-*8 ("The party-witnesses such as employees are presumed willing to testify at trial and thus, are not part of the analysis of th[e convenience of witnesses] factor.") (citing *Nice Systems*, 2006 U.S. LEXIS 74642, at *7.).

To the extent that Oclaro and QinetiQ intend to call on their own respective employees to testify, the parties are obliged to procure their attendance at trial.  Therefore, the convenience of these witnesses is irrelevant, and does not weigh in favor of transfer.[9]

### b.    *Oclaro Has Not Shown That There Are Material Non-Party Witnesses Who Will Be Unavailable for Trial in Delaware*

While the convenience of party witnesses is irrelevant, courts do consider the convenience of non-party fact witnesses as part of the transfer analysis, to the extent that they may be unavailable for trial.  *See Jumara*, 55 F.3d at 879; *Affymetrix*, 28 F. Supp. 2d at 203 ("[Non-party] fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the 'balance of convenience' analysis.").

However, the unavailability of non-party fact witnesses cannot be given any weight unless the proponent for transfer specifically identifies them and provides "adequate information with respect to the content and materiality" of their testimony." *See id.*, 28 F. Supp. 2d at 205 (citing *United Air Lines v. United States*, 192 F. Supp. 795, 796 (D. Del. 1961); *Sunds*

---

[9] Oclaro's "convenience" argument regarding its witnesses also fails because Oclaro has totally failed to specifically identify them, the substance of their testimony, and the materiality of their testimony. *See Inter-City Products Corp. v. Ins. Co. of North Am.*, C.A. No. 90-717-SLR, 1993 WL 18948, at *4 (D. Del. Jan. 26, 1993) ("When a party moves for venue transfer pursuant to Section 1404(a), it must file affidavits specifically identifying its witnesses and their residences, and outlining generally the content and relevance of their testimony") (internal quotations omitted).

*Defibrator, Inc. v. Durametal Corp.*, C.A. No. 96-483 MMS, 1997 WL 74660, at *3 (D. Del. Jan. 31, 1997)).

Even where a defendant has identified a specific non-party witness, provided the content and materiality of the testimony he is expected to give, and shown that he may be unwilling or unable to personally attend trial in Delaware, the Court may still not weigh this fact in favor of transfer, unless the defendant has also shown that the witness's testimony cannot be presented via a recorded deposition. *See Leonard*, 2008 U.S. Dist. LEXIS 103439, at *9 (noting that witnesses' unwillingness to travel "did not favor transfer ... [because] regardless of where trial proceeds, discovery will be taken 'in the same fashion' and could be presented at trial via recording rather than live testimony.") (analogizing with and citing *Alcoa*, 2007 U.S. Dist. LEXIS 47652, at *13 (D. Del. July 2, 2007)); *Pernod Ricard*, 2006 U.S. Dist. LEXIS 91969, at *4, *9-*10 (denying motion to transfer to S.D. Fla. where the witnesses, including elderly and frail individuals, reside in Florida, and defendant has not shown that their testimony cannot be "presented via recorded depositions, as opposed to witnesses traveling and appearing live.").

Oclaro identifies JDS Uniphase Corporation as the only non-party entity that might be called upon to testify.  (D.I. 15, Def.'s Br. Mot. Transfer 11.)  Oclaro argues that JDSU's corporate witnesses may testify regarding the scope of its license agreement with QinetiQ involving the patents-in-suit, the royalty rate, and the JDSU products licensed.  (*Id.* at 11; D.I. 17, Declaration of Kate Rundle ¶¶ 3, 5.)  This testimony, Oclaro contends, without explanation, "will be critically important to damages issues."  (D.I. 15, Def.'s Br. Mot. Transfer 11.)  Oclaro asserts, "upon information and belief," that JDSU's knowledgeable corporate witnesses reside within the subpoena power of the Northern District of California, citing no other basis than the fact that JDSU is headquartered in Milpitas, California.  (*Id.* at 11; D.I. 17, Rundle Decl. ¶¶ 4, 5.)

To begin with, Oclaro has not shown that a live witness's testimony is actually required to establish the scope and terms of, and the products covered under, JDSU's license agreement with QinetiQ. The license agreement itself will be produced during discovery, and may be presented at trial. To the extent that its contents are important to the case, the license agreement speaks for itself. And, QinetiQ's Dr. Higgs is fully knowledgeable about the agreement and can testify competently about it. *See* Higgs Dec. ¶¶ 12-13.

Further, the only JDSU employee who has full knowledge of, and can competently testify about, the license agreement is Mr. Edmond Murphy. (*See* Declaration of Edmond J. Murphy ("Murphy Dec.") ¶¶ 5-6, submitted herewith.) Mr. Murphy personally "negotiated the entirety of the Agreement on behalf of JDSU, including the scope of the license, the financial terms (including the royalty rates), and the JDSU products that are covered by the agreement." (Murphy Decl. ¶ 5.) Contrary to Oclaro's speculation, Mr. Murphy resides in Connecticut and works out of JDSU's Bloomfield, Connecticut office, outside the subpoena power of the Northern District of California. (Murphy Decl. ¶ 3). Moreover, Oclaro has not shown that Mr. Murphy would be unwilling to attend trial in Delaware, or that he would be available to testify in the Northern District of California. In the event that Mr. Murphy's testimony is critical but he is unwilling or unable to attend trial in Delaware, Oclaro can present his testimony at trial via recorded deposition. *See Leonard.*, 2008 U.S. Dist. LEXIS 103439, at *9; *Pernod Ricard*, 2006 U.S. Dist. LEXIS 91969, at *9-*10.

### 5.   The Availability of Books and Records Does Not Favor Transfer

One final private interest factor courts consider in deciding a motion to transfer is the location of books and records, to the extent that they may not be available in one of the fora. *Jumara*, 55 F.3d at 879. As Oclaro concedes, "in today's world of electronic discovery, it is

unlikely that parties will be unable to produce documents in the alternative forum."[10] (D.I. 15,

Def.'s Br. Mot. Transfer 7 n.4.)  Therefore, this factor also does not favor transfer.

### C.    The Public Interest Favors Litigating in Delaware

#### 1.    A Judgment in This Case Would Be Equally Enforceable in Delaware and in California

Oclaro acknowledges that any judgment entered against it "could be enforced by either

the District of Delaware or the Northern District of California." (*Id.* at 13.)  Accordingly, the

enforceability of judgment does not favor transfer and is neutral.

#### 2.    Practical Considerations Do Not Favor Transfer

*Jumara* identifies "practical considerations that could make the trial easy, expeditious, or

inexpensive" as a public interest factor to be considered in adjudicating a motion to transfer.  55

F.3d at 879.  This factor is most often implicated in patent cases when there are other actions

involving the same patents and parties pending in another court.  *See, e.g., APV North America*,

295 F. Supp. 2d at 399 (granting transfer where there is an earlier-filed patent infringement

action involving five of the seven patents-in-suit pending before the transferee forum, which has

already progressed much further and faster than the case in Delaware).  Here, there are no first-

filed cases involving the patents-in-suit pending elsewhere.

---

[10] Nevertheless, in support of its argument for litigating in the Northern District of California, Oclaro makes the conclusory statement that "*most* of Oclaro's ... documentary and physical evidence relevant to damages are in San Jose." (Br. at 13 (citing Turin Decl. ¶ 8) (emphasis added).)  In fact, Oclaro's Chief Financial Officer, Jerry Turin, upon whose declaration this conclusory statement is based, does not represent that *most* of the damages documents are located in San Jose.  At best, Mr. Turin's declaration shows that *some* "[d]ocuments related to design, development, sales and marketing of Oclaro's [accused] products are located at ... its San Jose, California headquarters[,]" while others are located at "its U.K. offices[.]" (Turin Decl. ¶ 8.)  As for "[d]ocuments and product samples related to manufacturing of Oclaro's [accused] products[, they] are located at its Caswell[, U.K.] and Shenzhen[, China] offices"—not in the Northern District of California.  (Turin Decl. ¶ 9.)

Oclaro puts forth a number of reasons why, in its view, it might be less expensive and more efficient to litigate this case in the Northern District of California. Among these, most are mere reiterations of why it would be less expensive *for Oclaro* to litigate there.[11] These are clearly not the public interest concerns the *Jumara* court had in mind. *See Waste Distillation*, 775 F. Supp. at 764 (D. Del. 1991) ("Th[e] Court will not grant a transfer merely because a different forum is more convenient for the defendants, or if it will simply shift the inconvenience to the other parties.") (internal citations omitted).

The only legitimate public interest consideration Oclaro has identified is the fact that the Northern District of California "has implemented Patent Local Rules ..., requires that parties consider alternative dispute resolution early in litigation, and has extensive experience with patent cases." (D.I. 15, Def.'s Br. Mot. Transfer 14-15.) While this Court has not yet adopted a set of local patent rules, it certainly has extensive experience adjudicating patent cases, and is free to order that the parties to consider alternative dispute resolution at any point in the

---

[11] In particular, Oclaro argues that it would incur "significant travel costs..., lost productivity ..., and local counsel fees" if it had to litigate in Delaware. As discussed in Section IV.B.3., *supra*, the expense and inconvenience of litigating here is not overly burdensome for a company like Oclaro, which is incorporated in Delaware and global in scale. Moreover, the cases cited by Oclaro do not stand for the proposition that one party's savings in local counsel expenses would tip the balance of factors in its favor. Rather, these cases favored transfer where, among other reasons, it would eliminate the need for local counsel for *all* parties. *See Mentor Graphics*, 77 F. Supp. 2d at 510 n.7 (noting that "because both parties are represented by California counsel, the added expense of local Delaware counsel would be avoided if this case is transferred."); *Affymetrix*, 28 F. Supp. 2d at 205-06 (reasoning that transfer "would eliminate [the local counsel] expense for not only [the defendants] but also [the plaintiff]."). QinetiQ is represented by counsel in New York, and would still need to retain local counsel if this case is transferred to Northern California. Thus, the economy of *both* parties does not favor transfer.

litigation.  As such, this Court is just as capable of adjudicating this case efficiently as the

Northern District of California would be.[12]

Moreover, "the parties, through their conduct in discovery and commitment to

streamlining the issues, may greatly influence the relative complexity and length of litigation."

*Alcoa*, 2007 U.S. Dist. LEXIS 47652, at \*14 ; *see also Leonard*, 2008 U.S. Dist. LEXIS 103439,

at \*11 ("it is the parties themselves that will most greatly effect the overall speed of [a] case.").

If Oclaro is truly concerned with reducing the cost and complexities of this dispute, it can do so

by agreeing to streamline discovery and agreeing to an expeditious case schedule.

### 3.    This Court Is No More Congested than the Northern District of California

Oclaro concedes that "the relative court congestion in the District of Delaware as

compared to the Northern District of California neither favors nor disfavors transfer." (D.I. 15,

Def.'s Br. Mot. Transfer 15.)  Moreover, as discussed above, the parties may, through

cooperative conduct, contribute to a faster, more streamlined litigation. *See Leonard*, 2008 U.S.

Dist. LEXIS 103439, at \*11 ; *Alcoa*, 2007 U.S. Dist. LEXIS 47652, at \*14.  Therefore, the court

congestion factor does not favor transfer.

### 4.    Local Interest Weighs Against Transfer

"[A] patent infringement case … is governed by federal law.  Therefore, California does

not have a 'distinct public interest' over Delaware nor will any special public policy be affected

by having the case tried here." *Magsil*, 2009 U.S. Dist. LEXIS 37511, at \*8 (citing *Jumara*, 55

F.3d at 882). *See also, e.g., Acuity Brands*, 2008 U.S. Dist. LEXIS 58364, at \*9 ("it is well

settled that patent rights are not considered state or local matters and do not implicate local

---

[12] In fact, during the period February 16, 2000-April 16, 2009, Your Honor has handled 107
patent cases.  (*See* LegalMetric Individual Judge Quarterly Report - Judge Joel A. Pisano,
relevant pages attached hereto as Ex. 16).

interests.") (citing *Jones Pharma, Inc. v. KV Pharm. Co.*, C.A. No. 03-786 JJF, 2004 WL

323109, at *3 (D. Del Feb. 17, 2004)); *Tristrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp.

2d 635, 643 (D. Del. 2008) ("patent issues do not give rise to a local controversy or implicate

local interests.").

      Indeed, if any local interest in implicated, Delaware "has an interest in litigation

regarding companies incorporated within its jurisdiction[,]" such as Oclaro.  *Leonard*, 2008 U.S.

Dist. LEXIS 103439, at *12; *Pernod Ricard*, 2006 U.S. Dist. LEXIS 91969, at *9.  Thus, this

factor weighs against transfer.

      **5.**    **There Are No Issues with Public Policies or Familiarity with The Applicable State Law**

      Oclaro concedes that "[t]he public policies of the District of Delaware and the Northern

District of California neither favor nor disfavor transfer."  (D.I. 15, Def.'s Br. Mot. Transfer 17.)

And because this is not a diversity case, "the familiarity of the trial judge with the applicable

state law" does not come into play.  (*Id.* at 7 n.4.)

## V.   **CONCLUSION**

Because none of the *Jumara* factors favor transfer, the Court should deny Oclaro's

Motion to Transfer Venue.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James S. Blank
Stephen J. Elliott
Soumitra Deka
Tzung-Lin Fu
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
Tel:  (212) 836-8000

Dated:  September 8, 2009
932267/34385

By:   */s/ David E. Moore*
  Richard L. Horwitz (#2246)
  David E. Moore (#3983)
  D. Fon Muttamara-Walker (#4646)
  Hercules Plaza, 6th Floor
  1313 N. Market Street
  Wilmington, DE  19899
  Tel:  (302) 984-6000
  rhorwitz@potteranderson.com
  dmoore@potteranderson.com
  fmuttamara-walker@potteranderson.com

*Attorneys for Plaintiff QinetiQ Limited*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on September 8, 2009, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on September 8, 2009, the attached document was Electronically Mailed to the following person(s):

Thomas C. Grimm
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
tgrimm@mnat.com
jtigan@mnat.com

Wayne O. Stacy
Carolyn V. Juarez
Cooley Godward Kronish LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
wstacy@cooley.com
cjuarez@cooley.com

Thomas J. Friel, Jr.
Cooley Godward Kronish LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
tfriel@cooley.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
D. Fon Muttamara-Walker
Potter Anderson & Corroon LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

928146 / 34385