IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QINETIQ LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 09-372 (JAP) |
| | ) |
| OCLARO, INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

**OCLARO'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE UNDER 29 U.S.C. § 1404(a)**

    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
    Thomas C. Grimm (#1098)
    Jeremy A. Tigan (#5239)
    1201 N. Market Street
    P.O. Box 1347
    Wilmington, DE  19899-1347
    (302) 658-9200
    tgrimm@mnat.com
    jtigan@mnat.com
      *Attorneys for Oclaro, Inc.*

OF COUNSEL:

Thomas J. Friel, Jr.
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
(415) 693-2000

Wayne O. Stacy
Carolyn V. Juarez
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
(720) 566-4000

September 18, 2009

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA ........................................................ 2

        A.    QinetiQ Never Claims that the Northern District of California is an Inconvenient Forum ........................................................... 2

        B.    QinetiQ Has No "Home Turf" and Did Not Choose to Litigate Where Oclaro's Allegedly Wrongful Acts Occurred ..................................................................................................... 3

        C.    Oclaro's Incorporation in Delaware Does Not Prevent Transfer to the Northern District of California ........................................ 4

        D.    The Northern District of California is More Convenient for the Witnesses ............................................................................................... 5

        E.    The Northern District of California is More Convenient for the Parties .................................................................................................... 6

        F.    The Federal Circuit's Recent Transfer Decisions Are Illustrative ................................................................................................. 8

CONCLUSION ........................................................................................................................... 9

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998) ......................................................................................... 8

*Alcoa v. Alcan Inc.*,
    2007 U.S. Dist. LEXIS 47652 (D. Del. July 2, 2007) ............................................................ 3

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002) ....................................................................................... 4

*Boston Scientific Corp. v. Johnson & Johnson Inc.*,
    532 F. Supp. 2d 648 (D. Del. 2008) ....................................................................................... 3

*Brunswick Corp. v. Pecor, Inc.*,
    C.A. No. 00-691-GMS (D. Del. Dec. 12, 2000) .................................................................... 4

*Cisco Sys., Inc. v. GPNE Corp.*,
    2008 WL 1758866 (D. Del. Apr. 17, 2008) ........................................................................... 7

*Continental Cas. Co. v. American Home Assur. Co.*,
    61 F. Supp. 2d 128 (D. Del. 1999) ......................................................................................... 3

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
    2001 WL 1617186 ................................................................................................................. 3

*In re Genentech, Inc.*,
    2009 WL 1425474 (Fed. Cir. May 22, 2009) ........................................................................ 8

*Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.*,
    C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001 .......................................................................... 4

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) .............................................................................................. Passim

*In re M.L.-Lee Acquisition Fund II, L.P.*,
    816 F.Supp. 973 (D. Del. 1993) ............................................................................................. 3

*MagSil Corp. v. Seagate Tech.*,
    2009 U.S. Dist. LEXIS 37511 (D. Del. Apr. 30, 2009) ......................................................... 7

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
    77 F. Supp. 2d 505 (D. Del. 1999) ...................................................................................... 4-6

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
   2006 U.S. Dist. LEXIS 91969 (D. Del. Dec. 19, 2006) ............................................................ 3

*Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*,
   2009 U.S. Dist. LEXIS 27959 (D. Del. Apr. 2, 2009) .............................................................. 3

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
   2009 WL 463977 (D. Del. Feb. 24, 2009) ................................................................................ 4

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ................................................................................................ 8

**RULES AND STATUTES**

28 U.S.C. § 1404(a) .................................................................................................................. 1-2, 8

**INTRODUCTION**

Defendant Oclaro, Inc. ("Oclaro") respectfully requests that the Court transfer this action from the District of Delaware to the Northern District of California. As Oclaro demonstrated in its opening brief, transfer of this action would best serve the interests and convenience of the parties and critical witnesses, and would preserve both sides' ability to put on their cases effectively. Plaintiff QinetiQ Limited's ("QinetiQ") Opposition Brief to Defendant's Motion to Transfer Venue ("Opposition") does not demonstrate otherwise and misses several essential points.

- QinetiQ fails to present any argument that the Northern District of California is an inconvenient forum for QinetiQ. Indeed, there is no inconvenience to QinetiQ because QinetiQ will be litigating this case away from its corporate headquarters regardless of whether Oclaro's motion to transfer is granted. In contrast, it is undisputed that the Northern District of California is a more convenient venue for Oclaro.

- The issue is not whether jurisdiction or venue is proper in Delaware, but whether venue is equally proper in the Northern District of California and is more convenient there. 28 U.S.C. § 1404(a). QinetiQ improperly merges the three distinct legal concepts of jurisdiction, venue, and convenience. Separate and apart from whether jurisdiction and venue are proper in Delaware, venue is more convenient in the Northern District of California and it is in the interests of justice to transfer this case.

- QinetiQ places undue emphasis on the argument that it selected the District of Delaware based upon Oclaro's incorporation there. The fact of Oclaro's incorporation is not a sufficient reason to ignore the remaining *Jumara* factors and defer to QinetiQ's choice of forum where incorporation is the only connection to Delaware.

- QinetiQ suggests that there would be minimal inconvenience to Oclaro by litigating in Delaware because Oclaro has potential employee witnesses with relevant knowledge residing in the United Kingdom. QinetiQ's argument completely ignores the inconvenience to the witnesses and Oclaro of taking executive management who are critical to Oclaro away from their homes and work in the Northern District of California for an extended period of time for trial.

In short, QinetiQ has brought a case with serious financial consequences to Oclaro. Justice requires that Oclaro be granted the opportunity to defend itself in the most convenient venue. Thus, the Court should transfer this action to the Northern District of California under 28 U.S.C. 1404(a).

## ARGUMENT

### I. THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

QinetiQ does not dispute that this Court has broad discretion to transfer this case. *See, e.g., Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The parties also agree on the application of the *Jumara* factors that this Court must consider in deciding whether to transfer this case. (*See* D.I. 23 at 8.) Oclaro's opening brief demonstrated that these factors weigh heavily in favor of transfer and QinetiQ's Opposition does not demonstrate otherwise.

#### A. QinetiQ Never Claims that the Northern District of California is an Inconvenient Forum

QinetiQ attempts to focus the Court's attention on the question of whether Delaware is a convenient forum for litigation. However, the question under 28 U.S.C. § 1404(a) is not whether the current forum is convenient, but whether the transferee forum is more convenient. QinetiQ does not dispute that the Northern District of California is more convenient for Oclaro. And QinetiQ does not dispute that the Northern District of California is equally convenient for QinetiQ. On balance, it is more convenient to litigate this case in the Northern District of California.

### B. QinetiQ Has No "Home Turf" and Did Not Choose to Litigate Where Oclaro's Allegedly Wrongful Acts Occurred

QinetiQ emphasizes that it selected Delaware because of Oclaro's incorporation there and that the Court should afford that selection "paramount" consideration. (*See* D.I. 23, Opp. at 10-13.) Incorporation in Delaware gives the Court jurisdiction over Oclaro and makes venue proper, but does not automatically mean that Delaware is the most convenient venue.

Under established case law, transfer to the Northern District of California may be less inconvenient to QinetiQ than it asserts. QinetiQ cites a laundry list of cases in support of affording its venue selection "paramount" consideration. But, QinetiQ selectively quotes the law in an attempt to deflect attention from the well-settled proposition also contained in many of those cases that transfer of an action is generally considered to be "less inconvenient to a plaintiff if the plaintiff has not chosen its 'home turf' or a forum where the alleged wrongful activity occurred[.]" *See, e.g. Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 654 (D. Del. 2008) (citing *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL 1617186, at *2; *Continental Cas. Co. v. American Home Assur. Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999)); *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F.Supp. 973, 976 (D. Del. 1993); *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, 2009 U.S. Dist. LEXIS 27959 (D. Del. Apr. 2, 2009); *Alcoa v. Alcan Inc.*, 2007 U.S. Dist. LEXIS 47652 (D. Del. July 2, 2007); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 2006 U.S. Dist. LEXIS 91969 (D. Del. Dec. 19, 2006). QinetiQ admits that it has no "home turf" upon which it can litigate this case. (*See* D.I. 23, Opp. at 12.) QinetiQ fails to allege that any wrongful activity took place in Delaware. (*See* D.I. 23, Opp. at 10-13; D.I. 1.) Because QinetiQ has no "home turf" and chose Delaware – where none

of the allegedly infringing acts occurred – Delaware is not automatically more convenient to QinetiQ than the Northern District of California.

### C. Oclaro's Incorporation in Delaware Does Not Prevent Transfer to the Northern District of California

QinetiQ asserts that it "rationally and legitimately" chose Delaware as the forum for this litigation because Oclaro is incorporated there and this Court has jurisdiction over Oclaro. QinetiQ improperly merges the separate legal concepts of jurisdiction, venue, and convenience. Contrary to QinetiQ's assertion in its Opposition, the fact of Oclaro's incorporation in Delaware, and this Court's resulting jurisdiction, does not alone defeat a motion to transfer. *See Synthes USA, LLC v. Spinal Kinetics, Inc.*, 2009 WL 463977 (D. Del. Feb. 24, 2009); *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505 (D. Del. 1999). Indeed, QinetiQ "rationally and legitimately" could have chosen the Northern District of California as the forum for this litigation: the Northern District of California is the location of Oclaro's allegedly infringing activities.

As stated in Oclaro's Opening Brief, "[w]here an alternative forum is more convenient and has more substantial connections with the litigation incorporation in Delaware will not prevent transfer." *APV North America, Inc.*, 295 F. Supp. 2d at 398-99 (*quoting Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.*, C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001) and *Brunswick Corp. v. Pecor, Inc.*, C.A. No. 00-691-GMS (D. Del. Dec. 12, 2000)). QinetiQ cites no case law refuting this tenet.

### D. The Northern District of California is More Convenient for the Witnesses

Despite QinetiQ's attempts to downplay the importance of convenience of the witnesses, the convenience of the non-party witnesses has often been an important factor in the Court's transfer analyses. *See, e.g. Mentor Graphics Corp. v. Quickturn Design Sys.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999).

Not a single witness – party or non-party – resides within the boundaries of the District of Delaware. QinetiQ's Opposition identifies three non-party fact witnesses who are neither employees nor consultants of QinetiQ: Carl Yelland, Edmond J. Murphy, and Jeremiah Chan. Mr. Yelland resides in the United Kingdom and is a former European Patent Attorney for QinetiQ. (*See* D.I. 25, Higgs Decl. at ¶ 11.) Mr. Yelland is named on correspondence from QinetiQ regarding QinetiQ's offers to license the patents-in-suit to Oclaro. (*See id.*) Testimony from Mr. Yelland may be relevant to Oclaro's counterclaims for unenforceability of the patents-in-suit due to laches and estoppel, as he presumably possesses knowledge regarding QinetiQ's investigation into Oclaro's products.

Mr. Murphy resides in Connecticut and is an employee of JDSU, the only known licensee of the patents-in-suit. (*See* D.I. 24, Murphy Decl. at ¶¶ 1, 3.) Mr. Murphy professes that he negotiated the license agreement between QinetiQ and JDSU on behalf of JDSU. (*See* D.I. 24, Murphy Decl. at ¶ 5.)

Mr. Chan is Senior Intellectual Property Counsel for JDSU and is located in the San Francisco Bay area. (Ex. 9.) The meetings between QinetiQ and JDSU took place at JDSU's Milpitas, California offices. (*See* D.I. 24, Murphy Decl. at ¶ 5.) Mr. Chan attended license negotiation meetings between JDSU and QinetiQ and had "substantive involvement" in connection with the license agreement, which directly contradicts QinetiQ's unsupported

assertion in its Opposition that Mr. Murphy is the only JDSU employee who can competently testify about the license agreement. (*See* D.I. 24, Murphy Decl. at ¶ 6; D.I. 23 at 19.) Tellingly, QinetiQ submits no declaration from Mr. Chan, nor does QinetiQ identify his location, which is in the San Francisco Bay area. (*See* D.I. 24, Murphy Decl. at ¶ 6; Ex. 9.) Testimony from Mr. Murphy and Mr. Chan may be relevant to the issue of damages, particularly the scope of the license between JDSU and QinetiQ, the financial terms of the license and the calculation of royalties, the JDSU products that are covered by the agreement, and the interpretation and application of the terms of the agreement to those products. QinetiQ's attempts to dictate by selective declaration the person from whom Oclaro should seek testimony should not be countenanced.

QinetiQ fails to establish that Delaware is a more convenient forum than Northern California for these witnesses. QinetiQ produces no statement from any of these non-party witnesses that they would be unwilling to testify in the Northern District of California or willing to testify in the District of Delaware. Of the non-party witnesses identified, none of them resides in the District of Delaware, and one of them is located in the Northern District of California. As the Court has previously recognized, for witnesses that reside outside the current forum and the transferee forum, the Court has no more subpoena power over them than would the transferee forum. *See Mentor Graphics Corp.*, 77 F. Supp. at 512. Accordingly, this factor weighs in favor of transfer.

> E. **The Northern District of California is More Convenient for the Parties**

As QinetiQ admitted in its Complaint, Oclaro's ***principal place of business*** is in San Jose, California, within the borders of the Northern District of California. (D.I. 1, Compl.

¶ 3.) QinetiQ cannot, now, disavow its own allegations simply because they do not suit its argument against transfer.

The majority of Oclaro's management executives, such as its Chief Executive Officer, Chief Financial Officer, its Executive Vice President and Division Manager (who was, prior to Bookham's merger with Avanex, Bookham's Vice President of Telecommunication Sales and Corporate Marketing), reside in the Northern District of California. (D.I. 14, Turin Decl. ¶ 5; D.I. 23, Ex. 15.) It is incorrect for QinetiQ to imply that these corporate representatives are not persons with knowledge of the issues in dispute, particularly in the face of a declaration averring that some of the persons with knowledge of Oclaro's design, development, sales and marketing activities for the accused MMI products are located at Oclaro's San Jose office. (*See* D.I. 14, Turin Decl. ¶ 8.) It would be far less disruptive to Oclaro's business for this case to be litigated in the Northern District of California, near these corporate witnesses' place of business and residences.

QinetiQ attempts to divert attention from the connections to the Northern District of California to the fact that Oclaro is a successful company and has a presence outside the United States. These facts should not defeat transfer.[1] While Oclaro is a successful company, it disclosed $210 million in net revenues, hundreds of millions of dollars shy of the "billion dollars of annual revenue" generated by the defendants in *MagSil Corp. v. Seagate Tech.*, 2009 U.S. Dist. LEXIS 37511, at *7 (D. Del. Apr. 30, 2009). Further, QinetiQ is by far the larger

---

[1] Most of the cases QinetiQ cites denying transfer to companies who conduct business on a national or global scale were decided by Judge Robinson, who admittedly places emphasis on whether a defendant is "truly regional." *See Cisco Sys., Inc. v. GPNE Corp.*, 2008 WL 1758866 (D. Del. Apr. 17, 2008) (stating that Judge Robinson has routinely denied motions to transfer "absent a truly regional defendant or critical witnesses that cannot be compelled to attend trial").

company. QinetiQ is a multi-billion-dollar company with a global presence that certainly would suffer no hardship if this case were litigated in Northern California. (*See* Ex. 10.) The convenience of the parties is weighed by "their relative physical and financial condition." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Further, QinetiQ ignores the numerous cases this Court and the Third Circuit have transferred to other venues that involved parties who were well-funded and national companies. Indeed, the defendant in *Jumara*, the seminal Third Circuit case that set forth the relevant factors for this analysis, was State Farm Insurance Co. – quite a well-funded and national company. *See also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 202 (D. Del. 1998) (transferring the case to the Northern District of California despite involving defendants who were "multi-million dollar corporations with interests and activities spanning the globe").

QinetiQ has made no argument that the District of Delaware is more convenient for it, nor can it. QinetiQ's principal place of business is in London. (D.I. 1, Compl. ¶ 2.) QinetiQ has no offices or employees located in the State of Delaware. (D.I. 23, Ex. 2.) QinetiQ's witnesses and corporate representatives will be required to travel a significant distance no matter where this case is litigated, so Delaware is not more convenient for QinetiQ.

### F. The Federal Circuit's Recent Transfer Decisions Are Illustrative

QinetiQ misapprehends Oclaro's reason for including information about the Federal Circuit's recent transfer decisions. The recent Federal Circuit decisions are, indeed, "of moment" to this case.

It is undisputed that Third Circuit law guides this Court's transfer analysis by application of the *Jumara* factors. However, any petition for a writ of mandamus on a transfer decision in a patent case would be submitted to the Federal Circuit. Although the Federal Circuit

applied Fifth Circuit law in its decisions in *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) and *In re Genentech, Inc.*, 2009 WL 1425474 (Fed. Cir. May 22, 2009), both the Third and Fifth Circuit law arise from the same federal statute, 28 U.S.C. 1404(a). Further, as Oclaro stated in its Opening Brief, the Fifth Circuit uses similar factors to those used in the Third Circuit. The recent Federal Circuit decisions illustrate the way the Federal Circuit currently interprets and applies those factors.

## CONCLUSION

As demonstrated in Oclaro's Opening Brief, analysis of the *Jumara* factors warrants transfer to the Northern District of California, which is a more convenient forum for this litigation. QinetiQ's Opposition has presented no persuasive argument why Delaware is the more convenient forum, nor why Northern California is inconvenient. The fact of Oclaro's incorporation in Delaware, which provides a basis for jurisdiction and venue, does not mandate that this case be litigated in Delaware, particularly where incorporation is the only connection to Delaware. On balance, the convenience of the parties and witnesses and the practical efficiencies that will be achieved by litigating in the Northern District of California weigh strongly in favor of transferring this litigation to the Northern District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

---
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
  *Attorneys for Oclaro, Inc.*

OF COUNSEL:

Thomas J. Friel, Jr.
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
(415) 693-2000

Wayne O. Stacy
Carolyn V. Juarez
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
(720) 566-4000

September 18, 2009
3125758

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 18, 2009, upon the following in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz<br>David E. Moore<br>D. Fon Muttamara-Walker<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street<br>P.O. Box 951<br>Wilmington, DE  19899 | *VIA ELECTRONIC MAIL* |
| James S. Blank<br>Stephen J. Elliott<br>Soumitra Deka<br>KAYE SCHOLER LLP<br>425 Park Avenue<br>New York, NY  10022-3598 | *VIA ELECTRONIC MAIL* |

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)